## In the Matter of the Petition of JOHN W. LIVINGSTON to Vacate an Asssessment.

In seeking to arrive at the intent of the legislature in passing a statute, words absolute in themselves and language the most broad and comprehensive may be qualified and restricted by reference to other parts of the statute and to other acts on the same subject passed before or after, and to the conditions and circumstances to which the legislation relates.

The provision of the act of 1880, "providing for the improvement of Morningside park, in the city of New York, and of the streets and avenues bounding said park " (§ 2, chap. 565, Laws of 1880), which requires the commissioner of public works to transmit to the board of assessors his certificate of the amount theretofore expended for the work, and that the proceedings for levying and collecting the assessments shall be pursuant to the laws then or thereafter in force for that purpose, was not intended to, and does not have the effect to ratify or validate an assessment, or to ratify or confirm any unlawful or other expenditure previously made for said improvement.

It seems all that was intended by the act was to confer power upon another department to complete the work then in progress, and to change the method of doing the work by requiring it to be done by contract let to the lowest bidder.

Said act, therefore, did not make the amount expended before its passage conclusive upon the property owners or limit the power of the courts to review, correct or vacate an assessment therefor when made, and no remedy which a property holder, liable for any part of the cost of the improvement had before, was in any way affected by the act.

Although under the prior acts authorizing the improvement (Chap. 697, Laws of 1867; chap. 288, Laws of 1868), there was no limitation upon

Statement of case.

the city authorities as to the method of doing the work, and the officers having charge thereof could lawfully procure it to be done, either by the day or by contract in their discretion, this did not preclude a property owner assessed for the improvement from instituting proceedings under the Consolidation Act (§§ 898–902, chap. 410, Laws of 1882) to set aside or vacate the assessment.

The act of 1880 (Chap. 550, Laws of 1880), which created a commission for reviewing local assessments, did not, in its original form, nor, as incorporated in the Consolidation Act (§ 906) does it confer exclusive jurisdiction on said commission to review said assessment, but by the Consolidation Act (§ 913) the right is reserved to the property owners on the line of the improvement in question to review the assessment by proceedings under prior statutes.

*It seems* the act of 1880 was intended as a temporary expedient for disposing of special assessment cases then existing, not as a permanent system.

In proceedings to vacate an assessment for said improvement the petition alleged that "certain frauds and substantial error have been committed in the proceedings," that the city, "its officers and agents failed and neglected to perform or cause the work to be done in a careful, intelligent, proper and economical manner and at its fair and market value, and have included charges and expenses therein which were not lawfully or justly chargeable on account of said work or against the property liable to assessment therefor." *Held*, that in the absence of any motion to make the petition more definite, or of an objection to proof under it, it was sufficient.

The petitioner proved that the expense upon which the asssssement was based for work done prior to the contract entered into as required by said act of 1880, largely exceeded its value, or what, in the exercise of common prudence and honesty, should have been expended. *Held*, that in the absence of any explanation or excuse on the part of the city, this constituted fraud, which entitled the petitioner to relief; that the city, in directing and making the improvement, was in some sense the agent of the property owners and so responsible to them.

It was claimed that the property owners had no right to complain, as out of the assessment, which amounted to $386,945.83, only $86,483.22, which did not exceed the fair cost or value of the work, was imposed upon private property in the locality, the balance having been assessed upon property of the city. *Held*, untenable; as whatever sum the city paid was as a property owner and upon the same principles with reference to amount and benefits as any other owner.

*In re McCready* (90 N. Y. 652), distinguished.

(Argued March 10, 1890; decided April 15, 1890.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department, made at the January

Term 1889 which affirmed an order of Special Term denying a motion to vacate an assessment.

The nature of the proceeding and the material facts are stated in the opinion.

*Charles E. Miller* for appellant. In the performance of work of this character and expenditure of money, the city and its officers act as agents and trustees for the property owners, by whom the expense is finally to be defrayed. (*In re Anderson*, 109 N. Y. 550–559.) As such agents the city was bound, not only to good faith, but to reasonable diligence and to such skill and diligence as is ordinarily possessed by persons of common capacity engaged in the same pursuits. And an omission of such skill and diligence is equally a breach of an agent's obligation and injurious to his principal, whether it be the result of inattention or incapacity or of an intent to defraud. For such breach an action will lie by the principal against the agent. (*Heinemann* v. *Heard*, 50 N. Y. 27–35.) Fraud is fully established by the gross and unexplained disparity between the amount expended — over $173,000 — and the fair cost, $40,987. Such a disparity has been frequently held in this court to be conclusive evidence of fraud in the absence of explanation, and upon the the doctrine of *stare decisis*, if no other, the petitioner in this case is entitled to prevail. (*In re Mead*, 74 N. Y. 216; *In re L. & W. Home*, 92 id. 116; *In re Righter*, Id. 115; *In re Anderson*, 109 id. 554.) The Consolidation Act of 1882 provides for the relief prayed for. (Laws of 1882, chap. 410, §§ 902, 903, 906, 907–913, 998; Laws of 1880, chap. 594, § 1.) Upon the assessment as reduced, interest should run only from the date of reduction. (*In re S. J. Asylum*, 69 N. Y. 353.)

*D. J. Dean* for respondent. The assessment for Morningside avenue is specially excepted, *eo nomine*, from the statutory provisions which authorize the vacation of an assessment by order of the court upon petition upon the ground of fraud or substantial error, as provided in the act of 1858. (Laws of

1858, chap. 338; Laws of 1882, chap. 410, §§ 898, 901, 906–914; Laws of 1880, chap. 550; *Jex* v. *Mayor, etc.*, 101 N. Y. 536; *Lennon* v. *Mayor, etc.*, 55 id. 361.) The allegations of the peti-tion and the proof are insufficient to entitle the petitioner to relief under the act of 1858, or sections 898–901 of the Con-solidation Act. (Kerr on Fraud, 382, § 8; *In re Keyser*, 10 Abb. Pr. 481; *In re Eager*, 46 N. Y. 100; *In re Roberts*, 81 id. 69; *In re Miller*, 12 Abb. Pr. 121; Bigelow on Fraud, 452, 493; *In re Miriam*, 84 N. Y. 596, 602; *In re Horn*, 12 Abb. Pr. 124; *In re Rich*, Id. 118; *In re Brady*, 85 N. Y. 268.) The commissioner of public works was authorized to commence the work in question without contract, and pro-ceed with the same, by day's work until the act, chapter 565 of the Laws of 1880, was enacted. (Laws of 1867, chap. 697; Laws of 1868, chap. 288; *Green* v. *Mayor, etc.*, 60 N. Y. 303; Laws of 1870, chap. 137, § 96; Laws of 1872, chap. 372, § 7; Laws of 1873, chap. 335, § 91; Laws of 1880, chap. 565.) If there was any defect in the authority of the commissioner of public works to proceed with the improvement by the day's work system, prior to June 16, 1880, his proceedings were validated by the last-named act, and the assessment author-ized. (*Brown* v. *Mayor, etc.*, 63 N. Y. 239; *Spencer* v. *Mer-chant*, 100 id. 585; 125 U. S. 345; *Town of Guilford* v. *Bd. Suprs.*, 13 N. Y. 143.)

O'BRIEN, J. This proceeding was instituted by the peti-tioner, a property owner, to vacate or reduce a local assessment, imposed by the proper authorities of the city of New York, for the purpose of reimbursing the city for large expenses incurred from July, 1872, to about May, 1886, in regulating, grading, curbing and otherwise improving Morningside avenue. The local improvement, for the expenses of which the assess-ment was made, was first authorized and commenced under chapter 697 of the Laws of 1867, and chapter 288 of the Laws of 1868.

It seems to be conceded on all sides that prior to the year 1880, when the legislature directed that the work then remain-

ing unfinished be done under contract, there was no limitation upon the public authorities of the city in regard to the method of procuring the labor and materials necessary to make the improvement, and that the officers who had charge of the work could lawfully procure it to be done by the day or by contract, as in the exercise of their discretion seemed best.

A certain portion of the expense was assessed upon the owners of private property in the locality and this assessment was confirmed by the proper board of officers November 6, 1886, and the petitioner owning property in the locality, upon which an assessment was imposed, feeling aggrieved thereby, brings this proceeding under section 898 of the Consolidation Act (Chap. 410, Laws of 1882), to review and correct the assessment, which he claims in certain particulars is unjust to him.

The real grievance of which the petitioner complains here, and which he brought to the attention of the court below, is that, as to a certain portion of the work done, the city was charged and it paid a sum greatly in excess of its just and fair value. That through the neglect of the city, or of some one of its officers, an extravagant price was paid for the work performed, and that the sum so paid, largely in excess of all benefits or value received, has been made the basis for the imposition of a burden upon his property. No complaint is made in regard to the price paid for the completion of the work which was done under the contract of June 26, 1882, in pursuance of chapter 565 of the Laws of 1880, amounting to $135,610.57. But as to the work done prior to that date, and for which the sum of $173,612.47 was paid, it is alleged, and as the petitioner claims proved, that its fair and just cost could not have exceeded the sum of $40,987.

In any view that can properly be taken of the evidence given by the petitioner at the Special Term, it seems to show that there was paid for the work performed, prior to the execution of the contract above referred to, and subsequent to July, 1872, a sum at least three times greater than its fair or just value, and this proof was not explained in any way,

or contradicted.   No reason was given or suggested why this improvement proved to be so much more expensive to the city and to the property owners than other work of a like character.   Thus far the case has been disposed of upon other questions, and substantially on the ground that the courts have no power, in this particular case, to grant the relief sought to be obtained.

The petitioner claims that certain frauds have been committed in the proceedings upon which the assessment is based, and the evidence offered by him in support of this charge has not, as appears from the opinions below, yet been considered or passed upon.   The application has been denied substantially upon the ground that the expenses complained of and included in the assessment in question, whether right or wrong, have been so far confirmed and ratified by the legislature as to be conclusive upon the courts, and, therefore, not subject to review in a proceeding of this character.

If, as is claimed on behalf of the respondent, the legislature has actually sanctioned and adjusted the excessive expenditures, which constitute the basis of the property owners' complaint, and has, in virtue of its taxing power, directed the collection of the same from the property in the locality, that would, no doubt, furnish a complete answer to this application, since the power of the legislature, upon proper notice, to do this cannot be questioned.   (*Spencer* v. *Merchant*, 100 N. Y. 585.)   But as no notice was provided for in the act, this circumstance alone would serve to negative any supposed intent on the part of the legislature to levy a local assessment, or to ratify or validate one already made by the local authorities.   This conclusion, however, is sought to be drawn from the provisions of chapter 565 of the Laws of 1880, which require the commissioner of public works to transmit to the board of assessors his certificate of the amount *heretofore* expended on the work, and that the proceedings for levying and collecting the assessments therefor shall be pursuant to the laws " now or hereafter in force for levying and collecting assessments for local improvements in said city."   We do not

think that this statute has any such effect as that claimed for it by the learned counsel for the respondent. It does not, by its terms, profess to ratify or confirm any unlawful or other expenditure made for this improvement. Nor was such purpose in contemplation when it was passed. Before that enactment the improvement of Morningside avenue was in charge of and directed by other officers and departments of the city. All that was intended by the act was to confer power upon another department to complete the work by contract to the lowest bidder, thus changing the method of procuring the work to be done, and the officer charged with the duty of directing it, and, at the same time, as it was taken from the control of the officers who prior to that time had charge of it, the section under consideration provided that the new officers to whom the work was confided, should certify to the proper authorities of the city the expenses of the work, past and future, to the end that the assessment therefor upon the property in the locality might be imposed according to law. There is nothing in the act which in terms, or by implication made the amount expended before its passage conclusive upon the property owner, or limited the power of the courts to review, correct or vacate the assessment when made. No remedy which the property owners, liable for any part of the cost of this particular improvement, had before, was repealed or in any way affected by the passage of the act. They had the same right, by proceedings of this character, to resist the burden imposed upon their property, and to assail the assessment in the courts, after it became a law, as they had before.

The other point upon which the case was disposed of in the Supreme Court, is that, although the total amount of the assessment with interest was $386,945,83, yet only $86,483,22 was imposed upon private property in the locality. The balance, or the sum of $300,462,47 having been assessed upon Morningside park, which was the property of the city, and inasmuch as the sum assessed on the owners of private property did not exceed the fair cost or value of the whole work,

they cannot complain. This view of the case was based upon the decision of this court in *Matter of McCready* (90 N. Y. 652). We do not think the cases are analogous. In the *McCready Case* only a part of the expense of the work, as reported by the officers in charge, was imposed upon the local property owners. The balance was paid for by general taxation on the city at large, and this court held that so long as the sum assessed against the owners of the property benefited did not exceed the fair and reasonable cost of the work, for which they could lawfully be assessed, they had no just ground of complaint, as no part of the excessive cost of the work chargeable to extravagance, negligence or fraud entered into the sum actually assessed upon the local property holders, but was paid by the city itself, no injustice was done. But the principle there decided has no application to the case now under consideration. Here the whole sum reported as the cost of the improvement, including, of course, the items against which fraud is alleged, is to be collected and paid by assessment on the property in the locality benefited. True that a large part of the property happens to belong to the city, and the greatest part of the burden is imposed on it, but this is because, upon equitable principles, it ought to bear such burden on account of greater benefits conferred. Whatever sum is paid by the city is as a property owner, and upon the same principles with reference to amount and benefits as any other property owner. Therefore, every owner of property in the locality where property is assessed has a right to complain if the total sum, which is the basis of the local assessment, is for any reason made to exceed the fair and reasonable cost of the improvement, the benefits of which form the equitable grounds of the burden imposed. We think that the rule sanctioned in the *McCready Case* did not preclude the courts below from considering the facts alleged and proved in this case by the petitioner.

Another objection is strenuously urged in this court by the learned counsel for the city, and apparently for the first time, namely, that there is no statutory power or authority under

which the court can entertain a proceeding of this character
to review or correct local assessments for this particular
improvement; that the general statutes applicable to the city
of New York, which confer power on the courts to vacate,
reduce or correct local assessments, expressly exclude assess-
ments made for improving Morningside avenue, and that as to
them property owners aggrieved are without remedy unless it
is afforded by an ordinary action at law or in equity. We
think that a fair and reasonable construction of the statutes
leaves no ground for this contention. The Consolidation Act
(§§ 898 to 902 inclusive), in express and specific terms, con-
fers power upon the courts to entertain proceedings upon
petition to vacate or set aside local assessments imposed upon
property for the expense of this very improvement. But a
subsequent section of the same act (§ 906), as is urged, confers
exclusive power upon another body, namely, a special com-
mission appointed under the act of 1880, to vacate, set aside
or correct this particular assessment, and as that commission
has ceased to exist, there is no power to review the assessment
by proceedings such as this. That part of the Consolidation
Act which relates to local assessments, and prescribes methods
for reviewing the same, is made up from several separate
statutes in force at the time of its passage. It contains the
act of 1858 and its amendments, and also the act of 1880, and
some other provisions of law existing long before. The com-
missioners appointed under chapter 594 of the Laws of 1880,
to revise the laws relating to the city of New York, and who
compiled the Consolidation Act, were directed by the legisla-
ture to preserve the meaning of the existing laws, and to
simplify, arrange and mould them into consistent acts. In
blending together various sections of different acts relating to
the same subject, and still preserving the meaning of all, some
apparent incongruity was unavoidable, but no remedy such as
is furnished by proceedings like this can be held to be abolished
unless the language used admits of no other reasonable con-
struction. If, therefore, prior to the passage of the Consoli-
dation Act, the property owners affected by this assessment

could have reviewed these assessments under laws then existing, it is quite reasonable to conclude that they can now. If chapter 550 of the Laws of 1880, which created the commission for reviewing local assessments, did not, in its original form, and before the consolidation, confer exclusive jurisdiction on that body over this assessment, and deprive the petitioner of the benefit of the act of 1858 and its amendments and all other methods of review, then it cannot fairly be given that effect after it became part of the consolidated statutes. It is quite clear from an examination of the original act of 1880 that no such exclusive jurisdiction was intended or conferred on the commissioners. It seems to have been intended as a temporary expedient for disposing of special assessment cases then existing and not a permanent system. It was passed on June 9, 1880, and the commissioners were named in the act, and their powers were to cease September 13, 1881, without any provision for successors. Jurisdiction was conferred upon the commission, in terms, by the first section, over assessments for Morningside avenue, *when confirmed,* but none of the assessments were then laid, nor was the work completed and the assessments confirmed, as we have seen, until 1886, long after the act by its own terms was to become inoperative. The eighth section specifies numerous cases to which the act was not to apply at all, and among them " any proceeding or action which may be commenced to vacate or set aside any of the assessments specified in the said first section, hereafter confirmed as herein provided, brought within three months after the date of such confirmation, or the relief to which any party thereto is or may be entitled in any such action or proceeding under existing laws." This broad exception of certain cases from the operation of the act includes the assessment in question. Moreover, the framers of the Consolidation Act plainly intended to leave this assessment to the operation of the act of 1858, as expressed in section 898, by the use of the following language in section 913 : " The lien of any assessment specified in section 902, not vacated, reduced or set aside in

any proceeding or action in said section mentioned, or not vacated, revised or modified by the said commissioners, pursuant to the provisions of this title, shall not be disturbed, modified or vacated, exeept in the manner and to the extent provided in section 903." The condition of the law existing prior to the Consolidation Act, and the policy of the legislature in preparing and passing it, leaves no room to doubt the legislative intent to preserve to the property owners on the line of the improvement in question, the right to review the assessments by proceedings of this character, and this intention must prevail whatever incongruities may apparently exist in different sections of the statute. The language used in section 906 to section 912, standing alone, seems to warrant the construction of the respondent's counsel; but when the whole title relating to local assessments is examined in connection with the original statutes, there is no difficulty in carrying out what must have been the intention of the law makers. In seeking to do that, words absolute in themselves and language the most broad and comprehensive may be qualified and restricted, by reference to other parts of the same statute and to other acts on the same subject, passed before or after, and to the conditions and circumstances to which the legislation relates (*People ex rel.* v. *Potter*, 47 N. Y. 375; *Smith* v. *People*, Id. 330; *People ex rel.* v. *Angle*, 109 id. 568.) The question then is, whether the petitioner has, in his petition and by his proofs, made a case for reducing the assessment on the ground of fraud or substantial error. The petition alleges in general terms "that certain frauds and substantial errors have been committed in the proceedings." A general allegation of this character, in the absence of any motion to make the pleadings more definite and certain, and in the absence of an objection to proof under it, has been considered sufficient to warrant a finding of fraud and to uphold a judgment entered thereon. (*Thomas* v. *Beebe*, 25 N. Y. 244.)

If the petitioner was not required to make this charge more definite and certain, and no objection was made to the proof offered to support it, the point on appeal ought not to

prevent an examination of the case on its merits. (*Matter of L. & W. O. Home*, 92 N. Y. 121.)    Besides, it will be observed that the petitioner has in substance stated the particular acts and omissions which he claims support the general allegations of fraud.    He has alleged that the city "and its officers and agents failed and neglected to perform or cause said work to be done in a careful, intelligent, proper and economical manner, and at its fair and market value, and have included charges and expenses therein which were not lawfully or justly chargeable on account of said work, or against the property liable to assessment therefor."    These allegations of the petition are broad enough to admit the proof contained in the record, and this proof, as we have already seen, establishes the fact that the expense of this work reported and included in the assessment, prior to the contract of 1882, were largely in excess of its fair and reasonable value and largely in excess of any sum which, in the exercise of common prudence and honesty, it ought to have cost.    In the absence of excuse or explanation this, we think, constitutes fraud within the meaning of that term as used in the statute. The city in directing and making the improvement was in some sense at least, the agent of the property owners, and if it permitted grossly extravagant or fictitious items to be included in the sum, to collect which the assessment was levied, that operated as a fraud upon him and entitled him to relief in this proceeding.

This result is in harmony with recent decisions of this court.    It was said in *Matter of Mead* (74 N. Y. 221): "It is not difficult to see how a lavish expenditure of money by paying extravagant prices for materials and work might increase the cost of the improvement far beyond its actual value, and thus show fraud on the part of the city authorities." In the *Matter of L. & W. O. Home* (92 N. Y. 116), it was said: "If the difference in the price had been such only as could be fully accounted for upon the theory that the work had been merely improvidently or perhaps extravagantly done, a case would not have been made for the interference

of the court. But here there was more, and the facts lead irresistibly to the conclusion that there · was either fraud or some unexplained irregularity." In the *Matter of Anderson* (109 N. Y. 559), the court after stating that the city in making street improvements at the expense of the property owner acted in some respects as his agent, says that in the discharge of this duty, "it should be required to exercise reasonable care and diligence in connection with the work. If by gross negligence on the part of the city, or the part of its officers, the expense of the work has been largely and unreasonably increased it is certainly unjust, that the consequences of the wrong should be visited wholly upon the owners of the property in the vicinity of the improvement. It is just in a case like this that the excessive and unnecessary expense should be borne by the whole body of the taxpayers." These were all cases, it is true, where the allegation of fraud was sustained by the court below, and facts such as exist in this case were held by this court to warrant the reduction of the assessment. The same rule should be applied to this case though the court below denied the relief on other grounds, and without passing upon the effect of the evidence.

The order appealed from should be reversed, but as the evidence given below is not absolutely conclusive in the sense that an appellate court would be warranted in granting the proper relief, the proceedings should be remitted to the Special Term of the Supreme Court for rehearing, costs to abide the event. If the proof is not then changed, that is the proper tribunal to determine what sum should be deducted from the assessment, and the precise extent to which the petitioner is entitled to relief.

All concur, except Ruger, Ch. J. and Gray, J., dissenting.
Order reversed, and ordered accordingly.