## FITZGERALD *v.* WALKER.

Decided November 21, 1891.

1. *Board of improvement—Letting contract.*

Under Mansf. Dig., section 870, which provides that, in the construction of improvements in its district, a board of improvement "may advertise for proposals for doing any work by contract, and may accept or reject any proposals;" and also under section 871, *id.*, which provides that the board may appoint agents for carrying on the work and fix their pay, and may buy all necessary material and implements, "and may, in general, make all contracts in the prosecution of the work as may best subserve the public interest:" it was *held*, that a board of improvement may, without advertising for public bids, let a contract for paving a street, or without re-advertisement modify a contract already let; provided there was no actual fraudulent intent.

2. *Board's acceptance of work—Conclusiveness.*

Where the board of improvement, whose duty it was to pass upon the sufficiency of the work, has accepted it, such acceptance is conclusive, unless it was the result of fraud or mistake.

3. *Contract—Rescission—Laches.*

A contract for street paving was entered into on the 15th day of March, 1888, and the work accepted by the board of improvement on the 22d of December following. On the 12th of February, 1890, plaintiffs, taxpayers of the district, brought suit to rescind the contract, alleging that the price was unreasonably large. There was no allegation or proof that plaintiffs were misled or deceived as to the labor or materials required to make the improvement, nor was it shown that any objection to the price was made until after the work was completed. During the progress of the work, the second annual assessment of taxes was collected without resistance, and paid on the work. *Held:* Under the circumstances plaintiffs must be deemed to have assented to the price, and cannot insist upon its exorbitancy.

4. *Improvement district—Powers.*

An improvement district is not a "municipality," nor the agent of one, within the meaning of section 1, article 16, of the constitution, which prohibits "any county, town or other municipality" from issuing any interest-bearing evidences of indebtedness. Its powers are derived from the legislature; and in exercising them it acts as agent of the property owners whose interests are affected by the duties it performs.

5 *Contract—Negotiable paper.*

   Whether a board of improvement, by making notes negotiable in form, can invest them with the characteristics of commercial paper or not, a contract otherwise valid will not be rendered inoperative by a provision that the work done under it should be paid for in negotiable notes.

6. *Contract—Interest.*

   A board of improvement may contract to pay interest on a debt legally contracted ; where it does so, the interest becomes a part of the cost of the improvements.

7. *Contract—*Ultra vires.

   Under section 837 of Mansf. Dig., which provides that "no single improvement shall be undertaken which alone will exceed in cost 20 per centum of the value" of the real property of the district, a contract which provides for a single improvement to exceed that amount in cost is void as to the excess only.

APPEAL from *Pulaski* Chancery Court.

DAVID W. CARROLL, Chancellor.

This was a suit brought by Edward Fitzgerald and others in the Pulaski chancery court against Walker, Rumbough and McLean as commissioners of Paving District No. 3, and the Arkansas Industrial Company, to restrain collection of the taxes levied for paving West Markham street in the city of Little Rock.

The complaint alleged that the plaintiffs were owners of real estate within the district ; that the commissioners had let the contract for paving one-half mile of said street to the Arkansas Industrial Company, without advertising for bids ; that the commissioners agreed to pay to the company the sum of twenty-seven thousand dollars ($27,000) in promissory notes, signed by themselves, negotiable and payable to said company, bearing interest from their respective dates until paid, at the rate of 6 per cent. per annum ; that the company paid no attention to any of the specifications of the contract, but simply dug up the street to a varying and unequal extent, and threw into it a quantity of loose boulders, filling the interstices with common earth and clay, and not with sand and gravel, as provided by the contract, so that when the work was barely completed, the street had

already become almost impassable ; that the commissioners had accepted the work, in fraud of the rights of the tax-payers; that the price agreed to be paid for said work ($27,000) was extravagant and wholly unreasonable, to the knowledge of the commissioners and of the company; that the county of Pulaski pays for similar work at the rate of about $4000 per mile, which is its reasonable value, and to pay $27,000 for half a mile of such inferior paving would be a fraud on the tax-payers of the district ; that all work done under the contract was not worth more than $2000, and the taxes already collected before the completion of the work were sufficient to pay that.

The complaint prayed for a cancellation of the contract and an injunction against the collection of the tax.

An amendment to the complaint alleged that the contract was void because in contravention of the constitutional provision prohibiting municipalities from issuing interest-bearing evidences of indebtedness, and because the improvement, by the terms of the contract, would cost more than 20 per cent. of the value of the property in the district, and because the contract was modified after its execution without re-advertisement for bids.

Defendants answered denying the allegations of the complaint. The court found that the street had been constructed substantially according to the contract, and that the contract was valid ; but held that the contract to pay interest was void. From this decision both parties appealed.

*U. M. & G. B. Rose* for appellants.

1. The contract was a fraud upon the tax-payers, because (1) the work was not done according to the contract; (2) the contract was extravagant to such a degree as to establish fraud on the part of the commissioners, or such gross negligence as is equivalent to fraud. 2 Dill. on Mun. Corp., secs. 914–19; 121 N. Y., 105 ; 92 *id.*, 121 ; 120 Penn. St., 374; 19 N. J. Eq., 376.

2. The contract is entirely void because it is *ultra vires.*

Mansf. Dig., sec. 837. The cost exceeded 20 per cent. of the value of the property in the district. This avoids the contract, and no action can be maintained upon the contract or upon a *quantum meruit.* 25 Ark., 267; 68 N. Y., 23; 75 *id.,* 65; 77 *id.,* 130; Dillon on Mun. Corp. (4th ed.), secs. 447–8–9, 451–7–8–9, 460–1–3, 134, 134*a*, 135–6, 136*a*.

3. The contract was let without advertisement. Sec. 870, Mansf. Dig.; Dill. Mun. Corp. (4th ed.), sec. 406; 75 N. Y., 65.

4. The contract is *ultra vires* because it stipulates that the notes shall bear interest. Art 16, sec. 1, Const.; Dillon, Mun. Corp., sec. 21.

*Eben W. Kimball* and *W. L. Terry* for appellees.

1. The questions raised by the first proposition of appellants' counsel are purely *questions of fact,* and the proof must be *explicit, clear and conclusive.* 7 Abbott, N. C., 44–5. Review the cases cited and contend that they do not sustain appellants' contention. Courts do not set aside contracts for inadequacy of consideration. See 119 N. Y., 559; 92 *id.,* 121. The remedy for illegal assessments is pointed out in Mansf. Dig., sec. 839. A substantial compliance is sufficient to enable the contractor to recover. 92 Pa., 111; 121 Pa., 382; 19 N. J. Eq., 379, 385–6,

2. Even admitting that the contract was excessive by adding in the interest, it would only be void *as to the excess.* 39 Ark., 335; 3 A. & E. Enc. Law, note 1, p. 887; 77 Ala., 248; 96 U. S., 341; 5 Abb., N. C. The intention of section 837 was that property-holders should not have their property burdened beyond 20 per cent.

3. The letting was advertised. But the law does not *require* it. 15 Kan., 131; 53 N. Y., 400; 64 *id.,* 409.

4. Section 1, article 16, constitution, does not apply to local improvement districts. But if it did, the stipulation for interest would be simply void. 96 U. S., 341.

5. Plaintiffs are estopped by their own conduct and laches. 130 Pa., 466; 18 Mich., 588; 50 Ark., 130.

6.   They are estopped by the acceptance of the work by their own representatives, the commissioners.   29 N. J., 450; Mansf. Dig., sec. 870; 18 Mich., 515; 6 Dakota, 353–4; 94 U. S., 98.

7.   The acceptance by the commissioners, if not *conclusive*, was *prima facie* evidence that the work was done according to contract, and was binding unless made through fraud or artifice.   1 Dill., Mun. Corp. (4th ed.), sec. 483; see 93 Pa., 115.

MANSFIELD, J.   The complaint prays for the cancellation of a contract entered into for the paving of West Markham street in the city of Little Rock, and for an injunction against the collection of further assessments to pay for that work.   This relief is sought on the ground of alleged fraud in making the contract and performing the work; and on the further ground that the contract was *ultra vires.*

1. Power of board of improvement in letting contracts.

I.   A court of equity will not rescind a contract on the ground of fraud unless the fraud alleged is clearly established.   *Veazie* v. *Williams*, 8 How., 134; *Holt* v. *Moore*, 37 Ark., 145; *Toney* v. *McGehee*, 38 Ark., 419.   The contract in question was an improvident one, and the price agreed to be paid was extravagant.   But the evidence fails, we think, to establish facts from which a fraudulent intent may be fairly imputed to the contracting parties.   One of the circumstances relied upon to prove fraud is that the contract was let without advertisement.   It appears that an advertisement was made for bids to be opened on the 25th day of October, 1887.   Several bids were received before that date, and all of them were rejected on the ground that they were too high.   There is no satisfactory proof that any further advertisement for bids was made before the 15th day of March, 1888, when the bid of the Industrial Company was offered and accepted.   The statute providing for the assessment of property for local improvements in cities of the first class contains the following section: "The board of improvements   *   *   *   shall have control of the construc-

tion of the improvements in their districts. They may advertise for proposals for doing any work by contract; and may accept or reject any proposals." Mansf. Dig., sec. 870. The next succeeding section provides that the board may appoint agents for carrying on the work and may fix their pay. It also provides that they may buy all necessary material and implements "and may, in general, make all contracts in the prosecution of the work as may best subserve the public interest." *Ib.*, sec. 871. These provisions, when considered in their proper relation to each other, indicate very clearly that it was not the intention of the legislature to require that all contracts for local improvements should be let by advertisement. Section 870 expressly authorizes the rejection of all proposals received upon advertisement; and section 871 provides that the work may be done under the supervision of agents appointed by the board and with materials and implements supplied by itself. The wide discretion with which the board is clothed by the statute could not be exercised if its acceptance of bids was limited to such as might be received upon advertisements inviting them. The language of section 870 is not mandatory; and we construe it as merely authorizing the board to advertise for proposals when in their judgment that mode of contracting will "best subserve" the interest of the property owners. By an agreement of counsel entered of record, all objection to the contract on the ground that it was awarded without advertisement was waived in the court below, except so far as the failure to advertise might affect the question of fraud. But we cannot see that it affects either that question or the power to make the contract complained of. As the advertisement was only authorized and not commanded by the statute, its omission was not an unlawful act, and evinced no disposition on the part of the board to proceed in an unwarranted manner. And it does not appear that either of the rejected bids received on advertisement was lower than that which was subsequently accepted.

After some progress had been made in the work, the

board proposed to modify the contract by dispensing with the sand and gravel which it required should be placed between the several courses of stone, and by putting the second and third courses of stone together and covering both with a layer of screened rock. This modification was assented to by the contractor, and an order directing it was entered by the board in the record of its proceedings. The conduct of the board in thus changing the requirements of the original contract is another circumstance commented upon in the argument as indicating fraud. The right to make the modification is, we think, embraced in the general power conferred by the statute in the last clause of section 871. *Hastings* v. *Columbus*, 42 Ohio St., 585. Some of the witnesses testified that the change thus made in the manner of constructing the pavement diminished the value of the work. In the opinion of others the change was beneficial. And the evidence is also conflicting as to whether it increased or diminished the cost of the work to the contractor. But there is nothing in the evidence tending to show that the modification was proposed or assented to through the influence of any improper motive, and it does not appear to us to indicate a fraudulent purpose.

2. Conclusiveness of board's acceptance of work.

In support of the charge of fraud, it is also urged that the work was not done in accordance with the contract. Whether the pavement was constructed according to the terms of the modified contract, is a question upon which the evidence is also conflicting. But it was the duty of the persons composing the board to pass upon the sufficiency of the work to meet the requirements of the contract. They accepted it; and, the evidence failing to show that their acceptance was the result of fraud or mistake, it is conclusive, and cannot be properly interfered with by the courts. *Motz* v. *Detroit*, 18 Mich., 515; In re *Livingston*, 121 N. Y., 94; Cooley on Taxation, 671-2; 15 Am. & Eng. Enc. Law, 1046; *Dixon* v. *Detroit*, 49 N. W. Rep., 628; *Wells* v. *Atlanta*, 43 Ga., 67; *Hovey* v. *Mayo*, 43 Me., 322; Elliott's

Roads & Streets, 442–3; *Pittsburgh* v. *McConnell*, 130 Pa. St., 466; *Omaha* v. *Hammond*, 94 U. S., 98.

While we cannot find from the evidence that the work was intentionally let at an extravagant price, it does appear that the price was largely in excess of the reasonable cost and value of the work. And it is insisted that this shows a degree of negligence equivalent to fraud on the part of the members of the board. That the contract for a local improvement may stipulate for a price so exorbitant as to constitute within itself a fraud upon the tax-payers, is, we think, a proposition that admits of no question. Cooley on Taxation, 671–2; 773, 774, 785; In re *Livingston*, 121 N. Y., 105; *Matter of Orphan Home*, 92 N. Y., 116; *Dixon* v. *Detroit*, 49 N. W. Rep., 628; Kerr on Fraud and Mistake, 187. But, conceding that the price complained of here was so extravagant as to entitle the plaintiffs to avoid the contract on that ground, their application for relief was not timely. The contract was entered into on the 15th day of March, 1888, and the work done under it was accepted by the board on the 22d day of December of the same year. This suit was begun on the 12th day of February, 1890. The power of a court of equity to rescind a contract on the ground of fraud must be invoked within a reasonable time after the fraud is discovered or could have been discovered by proper diligence. Bigelow on Fraud, 436, 438; Kerr on Fraud, 303, 305; *Merritt* v. *Robinson*, 35 Ark., 483; Bishop on Contracts, sec. 680; 2 Herman on Estoppel, sec. 1044. The right to rescind, says Mr. Bigelow in his work on Fraud, is to be determined by the state of things at the time the contract was entered into. And Mr. Bishop says the rescission comes too late after there "has been an act of acquiescence with full knowledge of the facts." Bishop on Cont., sec. 680. Some of the plaintiffs were among those who petitioned for the assessment which was the basis of the contract they now seek to avoid. The proceedings which followed were had under a public law of the State, and were of such nature that all persons owning property within the improvement district are charged

*[margin note:]* 3. Right to rescind contract lost by laches when.

with notice of what was done. *Swift* v. *Williamsburgh,* 24 Barb., 430; 2 Herman on Estoppel, sec. 1221. The members of the board were the agents of the lot-owners, and it was the privilege of the latter to have full information of all the board's official acts. No presumption can therefore be entertained that at the time the work was commenced the plaintiffs were ignorant of the price to be paid for it, or of any other circumstance affecting the validity of the contract. There is no allegation or proof that they were misled or deceived as to the labor or materials required to make the improvement; and it is not shown that any objection to the price was ever made until after the work was completed. On the contrary, the evidence shows that during the progress of the work the second annual assessment was paid, and it does not appear that any resistance was offered to its collection. Under these circumstances we think it must be held that the plaintiffs assented to the price, and that they cannot insist upon its exorbitancy now as a ground for avoiding the contract.

**4. Powers of improvement district.** II. Section 1, article 16, of the constitution of 1874, declares that "neither the State nor any city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness," except such as may be authorized by law to pay for existing indebtedness. In support of the second ground of relief stated in the complaint, it is argued that the board of improvement is a "municipality," within the meaning of the section quoted above, and that the contract is therefore *ultra vires* because it stipulates for the making and delivery of promissory notes bearing interest. But a municipality is defined to be "a city, a municipal corporation" (Anderson's Law Dictionary, p. 692); and this is evidently the meaning in which the term is here used by the constitution. The fact that an improvement district is organized to accomplish a purpose which in a limited sense may be said to be "municipal," does not make it a "mu-

nicipal corporation." It exercises no legislative powers, and lacks many other essential characteristics of a corporation created for the government of a city or town. If it were such corporation, then it would be subject also to the limitation imposed by section 4, article 12, of the constitution, which forbids any municipal corporation to levy in one year a greater tax than five mills on the dollar, except to pay indebtedness existing at the time of the adoption of the constitution. But it is admitted that an annual assessment for local improvement may lawfully amount to 1 per cent. of the assessed value of the property to be improved.

It is said, however, that an improvement district is the agent of the city, and as such can have no greater power than its principal. But such district is not in any sense the agent of the city or town within which it is organized. Its powers are derived directly from the legislature, and in exercising them the board acts as the agent of the property owners whose interests are affected by the duties it performs. *Little Rock* v. *Board of Improvement*, 42 Ark., 152; *Davis* v. *Gaines*, 48 Ark., 386; In re *Livingston*, 121 N. Y., 105, 106; *Bond* v. *Mayor*, 19 N. J. Eq., 376; *Little Rock* v. *Katzenstein*, 52 Ark., 107.

The stipulation as to the notes was that the sum agreed upon as the cost of the work should be paid in the negotiable promissory notes of the board, to be executed from time to time as the work proceeded, and to bear interest from their respective dates at the rate of 6 per cent. per annum. How many of these notes were made and for what sums, the abstracts do not inform us. For aught that appears to the contrary, such as were executed are still held by the contractor. And, the right of no third party intervening, we are not called upon to decide whether a board of improvement, by making notes negotiable in form, can invest them with all the characteristics of commercial paper. See 1 Dillon, Mun. Corps., secs. 123, 126; *Claiborne County* v. *Brooks*, 111 U. S., 400. But as the stipulation for the delivery of the notes was merely a method of making payments

5. Validity of contract to issue negotiable paper.

on the work, the want of power to execute them would not affect the validity of the other stipulations of the contract. In that respect the contract would be similar to that ruled upon in *Hitchcock* v. *Galveston*, 96 U. S., 341. In that case it was held that a contract for the construction of sidewalks was not rendered wholly inoperative because it provided that the work done under it should be paid for in bonds of the city which there was no authority to issue; and that, the contract being in other respects valid, the city was liable upon it.

**6. Contract for interest.** But if no effect be given to the stipulation of these parties as to the notes mentioned, enough remains in the contract to show that it was intended to bind the board for the payment of interest on the whole amount agreed to be paid for the work; and it is expressly stipulated that interest on the entire debt shall be paid annually, and that the remainder of the annual tax collected shall be applied to extinguish the principal debt. The amount for which the district is thus made liable exceeds 20 per cent. of the assessed value of the property. We think the power to bind the district for the payment of interest on a debt legally contracted is fairly to be implied from the powers which the law expressly confers upon the board. 1 Dillon, Mun. Corp., secs. 125, 506; Mansf. Dig., secs. 870–872.* The board may be unable to borrow money. And it is not to be presumed that the legislature expected the contractors to undertake improvements requiring the expenditure of large sums of money without compensation in the way of interest for the delay in making payment—a delay which in many cases the statute itself necessitates by providing that if the estimated cost of an improvement exceed one per centum of the assessed value of the property, then the assessment shall be

---

*Section 872 of Mansf. Dig., referred to in the opinion, is as follows:

" In order to hasten the work the board may borrow money, not exceeding 90 per centum of the estimated cost of the work, at a rate of interest not exceeding 10 per centum per annum, and may pledge all uncollected assessments for the re-payment thereof."

paid in successive annual installments, and that no assessment shall in any one year exceed one per centum of such assessed value.

But where interest is thus stipulated for, it become a part of the cost of the work, within the meaning of sections 837, 868 of the Digest. The former declares that " no single improvement shall be undertaken which alone will exceed in cost 20 per centum of the value " of the real property of the district. And section 868 provides that when any work has begun which shall not be completed and paid for out of the first or other assessment, it shall be the duty of the council to make assessments for its completion from year to year until 20 per centum of the value of the real property of the district " shall be collected and consumed in such improvement." These provisions expressly limit the amount for which a lien can be created for any single improvement. And the limitation is clearly disregarded where the amount of all the annual assessments required to satisfy the lien exceeds the maximum per centum which the law permits to be levied. Whether that amount consists only of the price agreed to be paid for the work or of that sum with interest accruing upon it under a stipulation contained in the contract, is not material. The improvement board was therefore without power to bind the district for the payment of interest on the contract price of the work beyond the time when all the interest accrued or paid and the original price would together amount to a sum equal to 20 per centum of the assessed value of the property. And it is plain that so much of the contract as stipulated for interest in excess of that amount was void. But does the stipulation for such excess render the contract void *in toto ?* The statute does not expressly prohibit the making of a contract which thus calls for an excessive levy; and the policy of the law would seem to be satisfied by holding the contract void as to the excess only. *Chapman v. County of Douglas,* 107 U. S., 348. Its validity, so far as it may be legally executed, appears to be sustained by the authority of adjudged cases bearing a strong analogy to

7. Contract
— *Ultra vires.*

this, as to the question stated above.   Thus in Alabama it is provided by statute that "no leasehold estate can be created for a longer term than twenty years."   And the Supreme Court of that State, in *Robertson* v. *Hayes*, 83 Ala., 290, held that a lease of land for forty years was "void only as to the excess of twenty years."   The court said the rule that prevails in respect to powers to lease is, "that when there is an affirmative power to lease for a specified term, a lease exceeding the term is void at law; but where there is a general power to lease, restrained by a negative limitation—such as not to exceed a prescribed number of years—the lease, though for a term exceeding the prescribed limit, will stand good for the term authorized by the power."   The constitution of New York provided that "no lease   *   *   *   of agricultural land for a longer period than twelve years *   *   *   shall be valid.   And in *Clark* v. *Barnes*, 76 N. Y., 301, it was held that "a lease for a longer period was not valid for twelve years, but was void *in toto.*"   The provision was not, said the court, that "no lease shall be valid for a longer term than twelve years; but the provision is that the kind of lease described shall be invalid." Commenting upon this decision the Supreme Court of Alabama in the case cited said : "The conclusion is rested on the express words of the constitution, that such leases shall not be valid; and it is clearly intimated that if the provision had been that they should not be valid for a longer period, they would be void only as to the excess."   The case of *Trammell* v. *Chambers County*, 9 Southern Rep. (Ala.), 815, was an action by the county for the breach of a contract by which the defendant hired certain convict labor from the 1st day of January, 1886, to the 1st day of January, 1889.   And the statute of Alabama provides that no such contract "shall be made previous to the 1st day of March, 1887, to continue longer than the 1st day of January, 1888." It was held that the contract was "not void *in toto*, but if void at all, only as to the time after January 1, 1888 "— following the case cited above from 83 Alabama.   In the

*Farmers' Bank* v. *Harrison*, 57 Mo., 503, the rule applicable to contracts by corporations in excess of their powers was stated as follows: " If power be given to a corporation to do an act in a particular way—as to loan money on personal security—and it adopt a different method of performance—as by making a loan on real estate—the act is *ultra vires* and void. If, however, the departure apply, not to the method itself, but purely to extent or quantity in an authorized feature, then the act is good up to the limit of extent or quantity, and void as to the excess. The test inquiry is, whether part of the undertaking may be cut off and what remains be in fulfillment of the law." In that case the bank, a corporation, was permitted by statute " to carry on the business of loaning money  *  *  *  at a rate of interest not to exceed 10 per cent. per annum." And it was held that a note given to the bank for interest at the rate of 18 per cent. per annum was void only as to the excessive interest. The court said the excessive rate of interest was the thing prohibited, and not the loan. The proviso of the Arkansas statute under consideration, like the Alabama law as to lease-hold estates, does not confer an " affirmative power." That is given by other provisions. But it is a " negative limitation " upon the general power of the board to undertake improvements whether by letting contracts or otherwise. The language is that " no single improvement shall be undertaken which alone will exceed in cost," etc. And the prohibition of the statute appears to be aimed not so directly against the making of a contract as against any estimate or plan for an improvement requiring a larger assessment than 20 per centum of the assessed value of the property. While the act clearly withholds the power to make an assessment exceeding that per centum, it does not expressly prohibit a contract for a greater amount nor declare that such a contract shall be void. On the principle governing the decisions cited, and consistently with what appears to us to be the policy of the statute, we cannot hold the contract void except as to the illegal excess in the as-

S C—11

sessment which it contemplates. The chancellor granted relief beyond that, and to this extent the decree was erroneous. The judgment will therefore be reversed, and a decree will be entered here in accordance with this opinion.

BATTLE, J., does not concur.