■ ROBERT H. BOWMAN, Appellant, v ELIZABETH J. SQUILLACE et al., Respondents.—In a proceeding pursuant to CPLR article 78 to review a determination of the respondent Zoning Board of Appeals of the Town of Clarkstown, dated June 19, 1978, which overturned, as erroneous, two violations which had been filed against a gasoline station owned by respondent All Points Texaco (Texaco), petitioner appeals from a judgment of the Supreme Court, Rockland County, dated October 24, 1978, which, in effect, granted Texaco's motion to dismiss the proceeding on the ground that petitioner lacked legal capacity to institute the proceeding. Judgment reversed, with $50 costs and disbursements, petition reinstated and motion to dismiss denied, with leave to respondents to serve their answers within 10

days after service upon them of a copy of the order to be made hereon, together with notice of entry thereof. In this CPLR article 78 proceeding, the building inspector of the Town of Clarkstown seeks to review a determination of the Zoning Board of Appeals of the Town of Clarkstown which overturned, as erroneous, two violations which he had filed against a gasoline station owned by respondent Texaco. In his petition, the building inspector alleged that he is a "party aggrieved" within the meaning of subdivision 7 of section 267 of the Town Law which authorizes any town official or person aggrieved by a determination of the board of appeals to seek CPLR article 78 review. Texaco moved to dismiss the petition asserting that the proceeding was brought in petitioner's official capacity as building inspector and that his failure to obtain authorization to sue from the Town Board of the Town of Clarkstown pursuant to section 65 of the Town Law rendered the proceeding a nullity. The motion to dismiss was supported by an affirmation of the Clarkstown Town Attorney, which was in the same vein. Petitioner opposed the motion by arguing that since he is a "statutory officer" as well as a person aggrieved, his authority to sue springs from subdivision 7 of section 267 of the Town Law, and section 65 of the Town Law is irrelevant. Special Term accepted Texaco's contentions and dismissed the petition on the ground that the suit was unauthorized. While it is apparent that petitioner is not "a person aggrieved", Texaco does not dispute that he is a town officer. The town attorney's affirmation declares that the action is unauthorized because a town officer must obtain town board permission to sue and Texaco's brief cites *Matter of Fox v Adams* (206 Misc 236) where a building inspector was deemed a town officer who lacked the right to sue without town board authorization. Even without these admissions by Texaco, however, it seems to us that a building inspector is a town officer (see *Matter of Haller v Carlson*, 42 AD2d 829). Once that conclusion is reached, *Matter of Bachety v Volz* (65 Misc 2d 176, affd 39 AD2d 842) mandates reversal here. Acting in her official capacity, Bachety, a town councilwoman, instituted an article 78 proceeding attacking a determination of the zoning board of appeals. This court affirmed Special Term's holding that the petitioner's status as a town officer gave her standing to bring the proceeding. Therefore, unseemly as it is to have a building inspector seek review of the action of the board of appeals which has reversed him, petitioner had the standing to bring the instant proceeding. If such situations are to be avoided in the future, subdivision 7 of section 267 of the Town Law can be amended—as the Village Law has been (see Village Law, § 7-712, subd 3)—to provide that a town officer may not seek review of a board of appeals determination without first having obtained approval of the town board. Accordingly, the judgment must be reversed and the motion to dismiss the petition denied. Lazer, J. P., Mangano and O'Connor, JJ., concur.

Cohalan, J., dissents and votes to affirm the judgment, with the following memorandum: As pertinent to this discussion, subdivision 7 of section 267 of the Town Law reads: "Any person * * * aggrieved by any decision of the board of appeals or any *officer*, department, board or bureau of the town, may apply to the supreme court for review by a proceeding under article seventy-eight of the civil practice law and rules" (emphasis supplied). In article 3 of the Town Law (Town Officers, Powers, Duties and Compensation) a comprehensive list of officers is named in section 20 (subd 1, par [a]) (town

of the first class).[1] After the enumeration, the section continues by stating: "as many town policemen and such other employees as the town board may determine necessary for the proper conduct of the affairs of the town." The section goes on to say: "The supervisor, *town councilmen,* town clerk, town justices, town superintendent of highways and receiver of taxes and assessments in every such town shall be elective. All other officers and employees in such a town shall be appointed by the town board, except as otherwise provided by law" (emphasis supplied). The building inspector (inspector) is not included within the list of enumerated officers.

## I

The question thus propounded for decision revolves about the status of the inspector. Is he a town officer, and if so, does he qualify as an officer who may apply to the Supreme Court for review of a holding of the zoning board of appeals (ZBA)? I would answer both questions in the negative. In passing, I note that an inspector has been held to be a public officer (Public Officers Law, § 2; see *Matter of Haller v Carlson,* 42 AD2d 829), but a public officer is not necessarily a town officer. On that score alone, see *Matter of Bachety v Volz* (65 Misc 2d 176, affd 39 AD2d 842). Bachety, as an elected councilwoman, qualified under section 20 (subd 1, par [a]) of the Town Law as a town officer empowered to seek relief under subdivision 7 of section 267. Further, Bachety represented the legislative segment of the town government, since the town board, of which she was a member, is an extension of the State Legislature, with powers delegated to it by the Legislature. For her, therefore, to seek review of the actions of the ZBA (an executive board) is not incongruous (see *Matter of Town Bd. of Town of Huntington v Zoning Bd. of Appeals of Town of Huntington,* 7 Misc 2d 210). The inspector, on the other hand, has limited powers. They are set forth in section 138 of the Town Law. As pertinent, the section reads: "Such inspector shall have charge of the enforcement of such codes, ordinances, rules and regulations of the town and of the zoning ordinance of the town". To enforce the ordinances, the inspector may sue in Supreme Court in the first instance *(Willetts v Schnell,* 21 AD2d 854, affd 16 NY2d 686). In *Willetts,* however, it should be noted that the ZBA did not appear at all in the enforcement proceeding, nor did the inspector go over the head of the ZBA. Section 138 has no cross reference to the ZBA and the latter's cross reference to the inspector as an administrative official is only to indicate the source of its jurisdiction for purposes of review. Since the ZBA reviews the actions of the inspector under certain conditions, it would be an anomaly to permit him later, by appeal, to review the actions of the ZBA, for by implication, if not fact, the ZBA is the superior of the inspector. Returning for the moment to subdivision 1 of section 20 of the Town Law, we find support for this view in subdivision 5 thereof. Subdivision 5 was added (L 1933, ch 751, § 4) to the Kirkland Act (Town Law, enacted by L 1932, ch 634, § 20). It reads: "5. The term 'officer' and/or 'officers' whenever used in this chapter shall *include* the incumbents of the offices of supervisor, councilman, town clerk, justice of the peace, superintendent of highways, assessor, receiver of taxes and assessments and collector, or any of them" (emphasis supplied). *"Include"* means to confine, shut up; enclose, to comprehend or comprise, as the whole comprises a part; contain, enhance. An example—"include suggests that it forms a constituent, component, or subordinate part (as the exhibit *includes* every work of this artist)" (Webster's New Collegiate Dictionary, copyright

1. Clarkstown, (1970 census) had a population of 61,653.

1961). It follows logically, from this definition, that if one is not included, then, of necessity, he is excluded. From a reading of subdivision 5 (added to the new Town Law only one year after its enactment as such—see L 1933, ch 751, § 4, eff Jan. 1, 1934) it would seem that the Legislature was closing a loophole and that the principle *"expressio unius est exclusio alterius"* (expression of one thing is the exclusion of another) would apply. If so, the inspector would be definitely relegated to the role of employee rather than to be in a twilight zone wherein he could style himself a "town officer" (see *Matter of Suffolk County v New York State Civ. Serv. Comm.,* 44 Misc 2d 557, affd 31 AD2d 549, affd 29 NY2d 851). In stating this conclusion, I am aware that in *Matter of Fox v Adams* (206 Misc 236) it was held that the Mayor of a village, the board of trustees and the building inspector had standing to sue under the Village Law—employing a statute almost identical with subdivision 7 of section 267—to prosecute an article 78 proceeding to review the action of the ZBA. As to the Mayor and the board of trustees, I have no quarrel with the decision, but I would consider the inclusion of the inspector as mere surplusage. In *Fox,* too, there was a resolution of the board of trustees directing the institution of the suit, a circumstance conspicuously absent at bar.

## II

If we assume, *arguendo,* however, at this point that the inspector has standing to sue pursuant to subdivision 7 of section 267, then we turn to subdivision 1 of section 65 of the Town Law, which states, in part, that: "The town board of any town may authorize and direct any town officer * * * to institute, defend or appear, in any action or legal proceeding, in the name of the town, as in its judgment may be necessary, for the benefit or protection of the town, in any of its rights or property * * * No such officer * * * however, shall employ legal counsel except as directed by the town board." To circumvent the final sentence of the subdivision, petitioner appears *pro se* in this proceeding. On his brief, though, he shows Tracy & Werner, Esq., "Of Counsel to Petitioner-Appellant". No permission or direction was given to employ the named counsel. The majority contends that section 65 has no relevance at bar. The thought occurs, nevertheless, that if successful, Bowman will expect his attorneys to be paid for their efforts and the town may be exposed to a suit for the payment of a legal fee (see *Cahn v Town of Huntington,* 29 NY2d 451; cf. *Corning v Village of Laurel Hollow,* 48 NY2d 348).

## III

In addition to the foregoing discussion, we have the problem of the interpretation of the law in general which is contained within the four corners of volume 1 (Statutes) of McKinney's Consolidated Laws of New York. The State Legislature in enacting statutes, is presumed to know what it is doing. Just as nature abhors a vacuum, so the Legislature abhors an absurdity. At bar, an apparent ambiguity exists in subdivision 7 of section 267 and we should attempt to reconcile it by proper interpretation. "In construing a statute which is ambiguous the construction to be adopted is the one which will not cause objectionable results" (see McKinney's Cons Laws of NY, Book 1, Statutes, § 141). In the text following the headnote to section 141 of McKinney's Statutes it is stated: "It is a fundamental rule of statutory interpretation that of two constructions which might be placed upon an ambiguous statute one which would cause objectionable consequences is to be avoided. Stated in another way, the rule is that the

construction to be adopted is the one which will not cause objectionable results * * * or absurdity." The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation. A case in point is *Simonelli v City of New York* (276 App Div 405, affd 301 NY 752). There, when real property held by the alien property custodian was restored to plaintiff in 1949, she was paid all the income derived while out of her possession. There was, however, a lien held by the city for unpaid taxes. Plaintiff brought action to cancel the property tax upon the theory that the city was attempting to tax property of the United States of America. Of this claim, the Appellate Division said (p 406): "The idea that property of enemy aliens should be exempted from local taxation, while citizens of the United States are required to pay corresponding taxes upon their own realty, is unjust and absurd. It is 'a fundamental canon of [statutory] construction that a solution which will bring about an objectionable result is to be avoided, if possible. A bad result suggests a wrong interpretation.'" In *County of Herkimer v Village of Herkimer* (251 App Div 126, affd 279 NY 560) the county held real property within the Village of Herkimer in a proprietary, not governmental capacity, i.e., not employed for a public use. The courts held it must pay taxes on an assessment of $129,580. The Appellate Division, Fourth Department, said (p 131): "It hardly seems fair that the plaintiff [county] should be permitted to take a profit, and escape its obligations to the defendants, at the expense of other taxpayers. It is inconceivable that the Legislature could have had any such intention when it passed this statute. The intent of that body is the primary consideration in the construction of a statute." *People v Ryan* (274 NY 149) concerned the interpretation of section 102 (subd 1, par [d]) of the Alcoholic Beverage Control Law.[2] Ryan bought alcoholic beverages in Connecticut for his own personal use. He was arrested in New York while bringing them home. The Court of Appeals said with respect to the law (p 152): "In the interpretation of statutes, the spirit and purpose of the act and the objects to be accomplished must be considered. The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to 'defeat the general purpose and manifest policy intended to be promoted;' all parts of the act must be read and construed together for the purpose of determining the legislative intent, and if the statute is ambiguous and two constructions can be given, the one must be adopted which will not cause objectionable results or cause inconvenience, hardship, injustice or mischief, or lead to absurdity. *(Smith v. People,* 47 N. Y. 330; *People ex rel. Wood v. Lacombe,* 99 N. Y. 43, 49; *Matter of Livingston,* 121 N. Y. 94; *Surace v. Danna,* 248 N. Y. 18, 21; *City Bank Farmers' Trust Co. v N.Y.C.R.R. Co,* 253 N. Y. 49, 55; *Matter of Meyer,* 209 N. Y. 386.)" The late and learned Learned Hand, Circuit Judge, expressed the principle eloquently in *Cabell v Markham* (148 F2d 737). In *Cabell,* the Trading with the Enemy Act, first enacted on October 6, 1917, was intended for use in World World I. After the cessation of hostilities, it fell into disuse and was not renewed until World War II (after Dec. 8, 1941). A new subdivision was added after World War II commenced, which was at odds with the original subdivisions. Of this discrepancy, Judge Hand wrote (p 739): "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any

---

2. In 1937 the statute read: "No common carrier or other person shall bring or carry into the state any liquors and/or wines, unless the same shall be consigned to a person duly licensed hereunder to traffic in liquors and/or wines, as the case may be."

writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." If we apply the rationale of the cited quotations from the above-cited cases, it must be plain for all to see that the Legislature could not have intended to endow the inspector with the power claimed, i.e., to attempt to review the actions of the ZBA. In any table of organization of town officials, he would be shown as inferior in station to the ZBA. For him to attempt to review the ZBA action in a CPLR article 78 proceeding would be tantamount to a Special Term Justice—dissatisfied with a reversal by the Appellate Division—appealing, *sua sponte*, to the Court of Appeals for a reversal. Unlike Humpty Dumpty, who said "when I use a word * * * it means just what I choose it to mean—neither more nor less",[3] words used in law are not always slaves to the dictionary. They are used to meet emergent circumstances. For example, in section 220.00 of the Penal Law under the heading "Controlled substances; definitions", the word "sell" is defined, in part "to sell, exchange, give or dispose of to another", a significant departure from the simple word "sell" as it is generally applied. Another instance of disparity in meaning occurs in the General Municipal Law vis-à-vis the former General Corporation Law. In the General Municipal Law the term "municipal corporation" includes only "a county, town, city and village" (§ 2); whereas, in the latter, the same term embraces "a county, city, town, village and *school district*" (§ 3, subd 2) (emphasis supplied). The amendment to the Village Law (§ 7-712, subd 3) is a step in the right direction, if only to make definite what has been ambiguous, i.e., *to shut the door on any attempt of the inspector to go over the head of the ZBA. I would affirm.*

3. *Through the Looking Glass,* ch 6.