COCHEU v. METHODIST PROTESTANT CHURCH OF VILLAGE OF WILLIAMSBURGH et al.

(Supreme Court, Appellate Division, Second Department.    July 7, 1898.)

1. STATUTES—CONSTRUCTION.
    In the construction of a statute, acts pari materia are to be construed together, whether they were passed before or after the statute under consideration.

2. EVIDENCE—DECLARATIONS.
    If a religious corporation procures the passage of an act reciting that it is the owner of a certain cemetery, the act may be read in evidence upon a trial against the corporation, as a declaration, and also in aid of construction of prior acts affecting the relation between the corporation and the cemetery.

3. RELIGIOUS CORPORATIONS—LIABILITY ON CONTRACTS.
    The purpose of the special act known as Laws 1853, c. 196, incorporating the Union Cemetery, was to leave the title of the cemetery lands in the

two religious corporations which owned it, while creating the new corporation to act as its agent, and the conveyance by one of the religious corporations, of all its title in the land, to the other religious corporation, under the authority of Laws 1878, c. 308, operated to render the latter sole owner in fee of the lands, and liable to respond to any damages for breach of contracts made on its behalf in the name of the cemetery corporation.

Appeal from special term, Kings county.

Action by Theodore Cocheu against the Methodist Protestant Church of the Village of Williamsburgh and the Union Cemetery. From a judgment sustaining the demurrer of the church to the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Carlisle Norwood (Marshall S. Marden, on brief), for appellant.
Omar Powell, for respondents.

HATCH, J. The complaint sets forth an action at law, averring the breach of a contract in writing, and demands judgment for money damages on account of such breach. The cause of action is peculiar only in the fact that the subject-matter of the action and of the contract has relation to a cemetery, and in its disposition we are compelled to consider the existence of three corporations, their relation to each other, the legal right of the plaintiff arising out of the contract, and such relation. When all are analyzed, and the case is stripped of its peculiar features, the legal relation and right seem to us to be quite clear.

The complaint avers that the defendant the Methodist Protestant Church of the Village of Williamsburgh is a religious corporation, duly organized; that the Union Cemetery is a corporation created by a special act of the legislature, known as chapter 196, Laws 1853. It then sets out in hæc verba the terms of said act, so far as the same is material to any right of the parties. Section 1 recites the purchase and ownership by the defendant church corporation, and by a corporation known as the "Methodist Protestant Church of the City of New York," of certain lands, now used as a cemetery for the interment of the dead, and where situate, which land shall be deemed and taken as a rural cemetery. This section then makes subject such land to the rural cemetery association act of 1847, except as is otherwise provided by the act. By section 2 the trustees of the said two church corporations, elected or appointed according to the usages of said churches, are constituted and continued a joint board of trustees of the said Union Cemetery, and at a regular meeting, called for the purpose, are authorized to elect one of their number president of the joint board, another vice president, and to appoint a secretary and treasurer. Further provision is made for filling vacancies in such offices and limiting the terms of office. This section further provided:

"And the said joint board, when so constituted and organized, shall have power to adopt and use a common seal, different from the seal respectively now used by said corporations, which shall bind said corporations jointly and

severally to the extent of the joint and several interests which said corporations may hold in the property of said Union Cemetery, and the said joint board are hereby vested with all the powers, duties and responsibilities vested by the said act, authorizing the incorporation of rural cemetery associations in the trustees of such association, except as herein otherwise provided."

By section 3, a certificate of the organization of the joint board of trustees by the appointment or election of its officers, and setting forth the names of the trustees and the officers, "and the intention of said joint board to be known as the Union Cemetery, under the provisions and regulations of this act, referring to this act by its title," proved or acknowledged, and recorded, shall be deemed a sufficient compliance with the act authorizing the incorporation of rural cemeteries. Section 4 provides for the treasurer's bond, with such sureties and in such amounts as the joint board shall approve, conditioned, inter alia, for an accounting for all moneys and paying over all balances belonging to the Union Cemetery, upon the order of the joint board. Section 5 provides for a report by the joint board to the respective boards of trustees of the respective religious corporations. The complaint then avers that the respective corporations complied with the terms of said act, and that the Union Cemetery became a corporation commonly known as a "rural cemetery," with a common seal, binding upon the said other corporations, to the extent of the joint and several interests which said corporations may hold in the property of the said Union Cemetery. The complaint then avers the enactment of chapter 308 of the Laws of 1878, a special act, and sets out the same in terms. So far as is essential to our present inquiry, this act authorized the release by one of the said religious corporations to the other of all its right, title, and interest in the Union Cemetery, and provided:

"And on the acceptance of such release the church corporation to whom the same is executed, shall, in its trustees, become vested with the entire property, interests, rights and franchises of said Union Cemetery, subject to all the duties and obligations now charged on the joint board of said corporations, such trustees to hold such property, franchises and rights as successors to the joint board, and to perform all the duties required by law of the said joint board."

The complaint then avers that, in pursuance of the last-mentioned act, the Methodist Protestant Church of the City of New York sold, assigned, and transferred all its right, title, and interest of, in, and to the land and said Union Cemetery to the present defendant church corporation, and that by such transfer the last-named defendant became the owner in fee of the lands known as the "Union Cemetery." The further averments of the complaint, so far as is necessary to be presently considered, show the making and execution of the agreement by the defendant church corporation under the name of the Union Cemetery, the fulfillment of the same by the plaintiff, and its breach by the defendants; also that the land constituting said cemetery has been sold, and the proceeds of such sale have been received by the defendants.

It is a settled canon in the construction of statutes that acts pari materia are to be construed together, and such is the rule, whether

the acts were passed before or after the statute under consideration. Smith v. People, 47 N. Y. 330; People v. England, 91 Hun, 152, 36 N. Y. Supp. 534. The object to be accomplished by the act and the intent of the legislature are the controlling facts in the determination of rights arising thereunder. It therefore sheds light to inquire into the difference existing between the present acts and the act authorizing the establishment of rural cemetery associations. Laws 1847, c. 133. By such law the land which is acquired by the cemetery association becomes the property of the corporation formed thereunder and the title to the land vests in it. As lots or plots are sold, the respective proprietors of such plots become entitled to vote for trustees provided to manage the association, and finally the proprietors must come into the control and management of the association and its property. It is evident, from the provisions of the present act, that such was not its purpose, either so far as the title to the land was concerned or in the management of the affairs of the association. If the purpose and object of the present act was to merely establish a rural cemetery association, then there was no occasion for the act itself. It is evident that, in management, the express terms of the act remove it from the law of 1847; for, by the most clear and explicit provisions, management is vested in the joint board of trustees, and such management is made perpetual. The proprietors of lots are therefore excluded, which would only seem to occur in the event that the title resided elsewhere than in the cemetery association. The act also reserves to the joint board of trustees the reception and control of the moneys of the Union Cemetery, and the board makes disposition of the same. There is therefore reserved control and management perpetually, disposition of the moneys received, and exclusion of lot proprietors from participation in any manner. It would seem that it was the clear intent of the act to depart quite radically from the general law governing such associations, and in so doing to also reserve a proprietary interest in the land; and such intent, we think, has been accomplished by the language used in the second section of the act of 1853,—that the joint board shall have power to adopt and use a common seal, different from the seal now used by the respective corporations, which shall bind, not the Union Cemetery, but such corporations, respectively, to the extent of their several interests in the property,—being language sufficient, coupled with the other provisions of the act, to show that the property of the Union Cemetery was not alone held, but owned, by the two religious corporations. The Union Cemetery was the creation of the statute. There are no words used in the act showing that it obtained title to a single foot of land, nor was it necessary that it should, in order to carry out the scheme of the act. Its creation was of an entity sufficient to dispose of the property right held and owned by the other corporations, and was evidently for matters of convenience in the transaction of the business created by the terms of the act. In other words, the two corporations owning the land, and wishing to retain title and management, were authorized to create another corporation, which should act as agent in the preservation of the matter which the act

authorized, constituted in such form as would enable it to vest title to land when authorized by the principal. Whatever, therefore, the Union Cemetery did in the conduct of the business was the act of the other corporations, through the joint board of trustees, and such, as we view it, is the clear meaning and intent of the act.

In pursuance of this purpose, the subsequent steps were had, and by authority of law the present defendant religious corporation became the sole party in interest, and liable to respond in damages for breach of its contracts. That this construction of the act is such as was understood by the parties and by the legislature is evidenced by the language of the last act authorizing this transfer, which provides that all the right, title, and interest in said rural cemetery, known as "Union Cemetery," its lands, franchises, and property, shall vest, and its trustees shall become vested, with the entire property, interests, rights, and franchises. We are further confirmed in this view by consideration of the legislative declaration contained in the act authorizing the defendant church corporation to sell this cemetery and remove the remains therefrom. Laws 1893, c. 352. This act, in terms, recites that the defendant church corporation is the owner of the Union Cemetery. It constitutes a construction of the former acts by the party, as it understood it, as it is its own act, and it is also a legislative declaration that such defendant was vested with title by its former acts. Such act can be resorted to for the construction of the present act, under the authority of the cases heretofore cited. It can also be read in evidence upon a trial against the party as a declaration and also in aid of construction. Duncan v. Duboys, 3 Johns. Cas. 125; Fox v. Village of Ft. Edward, 48 Hun, 363, 1 N. Y. Supp. 81.

It follows that the interlocutory judgment should be reversed, with costs, but leave should be given to answer on payment of costs. All concur.

---

(23 Misc. Rep. 511.)

In re MILLER.

(Surrogate's Court, Otsego County. May, 1898.)

1. CLAIM AGAINST DECEDENT—COUNTERCLAIM—EFFECT OF WAIVER.
   In proceedings on a claim against the estate of a decedent, the fact that claimant made no objection to the admission in evidence of the joint note of claimant and her husband, held by the administratrix, would not justify the court in allowing it as a valid counterclaim.

2. JUDGMENT ON JOINT NOTE.
   A joint judgment only can be rendered on a joint note.

3. COUNTERCLAIM—JOINT OBLIGATION.
   Code Civ. Proc. § 501, restricting counterclaims to causes of actions against the plaintiff or the person he represents, and in favor of defendant or defendants between whom and the plaintiff a separate judgment may be had in the action, excludes a cause of action arising on the joint note of a plaintiff and her husband held by a defendant sued by the wife for an individual liability.