## COUNTY COURT—NIAGARA COUNTY,

### June, 1914.

# THE PEOPLE v. NIAGARA FALLS POWER CO.

#### (86 Misc. 61.)

(1.) SUNDAY*—REQUIREMENT OF STATUTE SETTING APART ONE DAY IN WEEK FOR BENEFIT OF EMPLOYEES IS VALID EXERCISE OF POLICE POWER—STATUTES.

The statute (Laws of 1913, chap. 740) which added section 8a to article 2 of the Labor Law (Consolidated Laws, chap. 31) which requires the setting apart for the benefit of employees of one day in the week, where they have been required to work on Sunday, has a reasonable connection with public health, welfare and safety and is a valid exercise of the police power.

(2.) SAME.

Where, upon a charge of violating said section 8a, the proof shows that defendant, an electrical corporation organized under chapter 83 of the Laws of 1886, failed to allow one employed in its factory twenty-four hours of rest in every seven consecutive days, a judgment convicting defendant will be affirmed.

APPEAL from a judgment of the Police Court of Niagara Falls convicting defendant of a violation of section 8a of article 2 of the Labor Law.

*F. L. Lovelace* and *Arthur Killian,* for appellant.

*Fred M. Ackerson,* district attorney, and *Burt Duquett,* for people.

---

* See Notes on Sunday Law, Vol. 18, p. 407; Vol. 19, p. 41; Vol. 22, p. 43.

Fish, J.:

This is an appeal from a judgment of the Police Court of the city of Niagara Falls convicting the defendant of a violation of section 8a of article 2 of the Labor Law of this state, on account of its failure to allow Frank J. Long, a person employed in its factory, twenty-four consecutive hours of rest in every seven consecutive days. The defendant is a corporation organized under chapter 83 of the Laws of 1886, and owns and operates an electric power plant in the city of Niagara Falls, N. Y., in which electric energy is generated. This electric energy is distributed to and used by the International Railway Company, the Niagara Junction Railway Company and various other non-railroad public service corporations and other corporations. The portion thereof distributed to the International Railway Company is used by it to operate its electric railroad and the portion distributed to the Niagara Junction Railway Company is used by it to operate its railroad.

The said International Railway Company and said Niagara Junction Railway Company are each domestic railroad corporations subject to the jurisdiction of the public service commission under article 3 of the Public Service Commissions Law; and are each operated wholly and exclusively by electric energy generated in the said power plant of the defendant. A portion of said power plant is devoted to the generation of electric energy for the use of said International Railway Company and a further portion is equipped with electrical machinery exclusively used for transforming and delivering electric energy for the operation of the railroads of said railroad corporations. The defendant is under contract to furnish approximately thirty per cent of its output of power to said railroad corporations, although, in actual practice, a considerable portion

of this thirty per cent is delivered from the power plant of an allied company of the defendant.

The said Long was engaged in that part of defendant's plant where electric energy is transformed for the said International Railway Company to the proper voltage for its use; and his duties were to record readings of meters, watch the machinery and the operation thereof and make reports as to the same; his principal duties being the tending of the electric railway converters of said International Railway Company, and an electric railway converter converting electric energy for the use of said Niagara Junction Railway Company. It is necessary that said power plant should be operated continuously in order to continuously supply electricity to said railroad corporations and other public utilities; and the employees of the defendant in said power plant are divided into three shifts, each on duty eight hours at a time and at the end of the week the shifts are changed so that during the week the men of each shift have eight hours of work followed by sixteen continuous hours of rest; but at the end of the week as the shifts are changed, the men of the first shift have only eight hours of continuous rest, those of the second shift sixteen hours of continuous rest and those of the last shift thirty-two hours of continuous rest. The said Long was employed in one of these shifts and had sixteen continuous hours of rest each day except that on one day in each three weeks he would only have eight continuous hours of rest and another day in each three weeks he would have thirty-two hours of continuous rest. The defendant claims (1) that said section 8a is unconstitutional, (2) that said power plant is not a factory within the meaning of the word factory as defined in section 2 of the Labor Law.

1. I think this act in question is a valid exercise of the police power of the state, because it has a reasonable connection with public health, welfare and safety. From time immemorial it

has been considered necessary for the physical welfare of the individual that he should have one day's rest in seven and laws securing this have been held constitutional. *People* v. *Havnor*, 149 N. Y. 198; *Petit* v. *Minnesota*, 177 U. S. 164; 27 Am. & Eng. Ency. of Law (2d ed.), 388.

In *Hennington* v. *Georgia*, 163 U. S. 299, the following words of Mr. Justice Field, delivered in a California case, are quoted with approval: " Its requirement is a cessation of labor. In its enactment the legislature has given the sanction of law to a rule of conduct which the entire civilized world recognizes as essential to the physical and moral well being of society. Upon no subject is there such a concurrence of opinion among philosophers, moralists and statesmen of all nations, as on the necessity of periodical cessations of labor.  One day in seven is the rule founded in experience and sustained by science."

The state is interested in building up strong, virile citizens to till its soil and develop its industries in times of peace and to defend it in times of war; and, by appropriate laws within reasonable bounds, can guard the health and welfare of the individual from the cradle to the grave.  Sunday is the day generally selected as a day of rest, because it is the day " regarded as sacred by the greatest number of citizens " and " causes the least inconvenience."  This statute does not close down this power plant and stop these railroads on Sunday. The state recognizes the great inconvenience which would result therefrom, and leaves the day of rest to be selected to any of the seven days of the week.

2. Section 2 of the Labor Law, at the time of the commission of the offense complained of and of the rendition of the judgment appealed from, defined the term factory as follows: " The term ' factory ' when used in this chapter, shall be construed to include any mill, workshop or other manufacturing or business establishment and all buildings, sheds, struc-

tures or other place used for or in connection therewith, where one or more persons are employed at labor, except power houses, barns, storage houses, sheds and other structures used in connection with railroad purposes, other than construction or repair shops, subject to the jurisdiction of the public service commission under article three of the public service commissions law."

The defendant asserts that, as thirty per cent of its output of electrical power was distributed to the railroad corporations above named and used by them to operate their respective railroads, its power plant is a power house " used in connection with railroad purposes " and therefore within the exception contained in the definition of the term factory as above quoted; and that it was the intention of the law makers to except all power houses supplying electricity for. the operation of railroads in order to avoid hampering or impeding the public service. With this contention I cannot agree. I think the '' power houses " referred to in the exception are such as are incidental to railroad purposes.

The power plant of the defendant is the principal thing here, and the distribution of a part of its power to railroads an incident of its business. If a power house of a non-railroad corporation which supplies some of its electrical energy to a railroad is used in connection with railroad purposes, then a storage house in which some portion of a railroad's equipment is stored, or a shed from which lumber or rails are shipped to a railroad for its use are each used in connection with railroad purposes, even though such storage house and shed are owned, controlled and used by those not engaged in the railroad business. Furthermore, the power houses referred to in the exception are such as are " subject to the jurisdiction of the public service commission under article three of the public service commissions law." This power house is not subject to

the jurisdiction of the public service commission under said article 3; that article only includes "common carriers, railroads, street railroads, railroad corporations and street railroad corporations" and the meaning of these terms is defined in section 2 of article 1 of the Public Service Commissions Law.

The power house of the defendant is an "electric plant" as defined in subdivision 12 of section 2 of said article and the defendant an "electrical corporation" as defined in subdivision 13 of said section 2 and is subject to the jurisdiction of the public service commission under article 4 of the Public Service Commissions Law and not under article 3 thereof.

The punctuation of the statute in the above quoted definition of the term "factory" shows that the words "subject to the jurisdiction" refer to and qualify the terms "power houses, barns, storage houses, sheds and other structures" and not solely the terms "construction or repair shops" as there is a comma after the word "purposes" and another between the word "shops" and the word "subject."

The punctuation of statutes in this state may be resorted to, in determining the intention of the legislature, when the meaning is not plain. *Tyrell* v. *City of New York*, 159 N. Y. 239.

Section 2 of the Labor Law was amended so as to define the term factory as above quoted by chapter 529 of the Laws of 1913, the statute prior to this amendment reading as follows: "The term 'factory,' when used in this chapter, shall be construed to include also any mill, workshop, or other manufacturing or business establishment where one or more persons are employed at labor." This section 2 was again amended by chapter 512 of the Laws of 1914 to define the term factory as follows: "The term 'factory' when used in this chapter, shall be construed to include any mill, workshop, or other manufacturing or business establishment and all buildings, sheds,

structures or other places used for or in connection therewith, where one or more persons are employed at labor, except power houses, generating plants, barns, storage houses, sheds and other structures owned or operated by a public service corporation, other than construction or repair shops, subject to the jurisdiction of the public service commission under the public service commissions law."

Acts *pari materia,* passed before or after the statute under consideration, are to be construed together. *Matter of Livingston,* 121 N. Y. 94; *Cocheu* v. *Methodist Episcopal Church,* 32 App. Div. 242.

Construing the two amendments together, it is quite clear that defendant's power house is within the exception contained in the 1914 amendment, and as a change in the law was intended it follows that said power house is not within the exception contained in the 1913 amendment for otherwise the last amendment would be useless and meaningless, its only object being to place within the exception power houses, etc., owned or operated by a public service corporation and subject to the jurisdiction of the public service commission under the Public Service Commissions Law. *People* v. *Weinstock,* 117 App. Div. 168.

It is to be noted that in the 1914 amendment the words " under article three of the public service commissions law " have been changed to " under the public service commissions law " indicating that in the 1913 amendment the power houses, etc., referred to were those of " common carriers, railroads, street railroads, railroad corporations and street railroad corporations " while under the 1914 amendment the power houses referred to are also those owned, operated or managed by an " electrical corporation."

Judgment of conviction affirmed.