## REED VS. HANGER.

The County Court granted a charter to erect a toll bridge, providing that it should ever remain free and open to the citizens of the county: *Held*, That the proper construction of the provision is, that the bridge should be free and open to the citizens of the county, whether they crossed on foot or otherwise, and also for the passage of their carriages, etc., or any other means of transportation employed in their lawful business, etc.

*Appeal from Pulaski Circuit Court.*

Hon. JOHN J. CLENDENIN, Circuit Judge.

HEMPSTEAD, for appellant.

1. The provision in the charter, that the bridge should ever remain free and open to the citizens of Pulaski county, was only a personal exemption from the payment of tolls, and did not exempt the property of the citizen.

2. Where a special privilege or exemption is conferred upon an individual or class of persons, it must be construed strictly. 9 *Bac. Abr. statute (J.)* 256; 2 *Paige* 116; 1 *Verm.* 359; 22 *Penn.* 496; 3 *Kelly* 31; 3 *Mass.* 266; 10 *Johns.* 467.

BERTRAND and GARLAND, for the appellee.

The grant of the privilege to erect and keep the toll bridge in this case, containing a provision exempting all citizens of Pulaski county from the payment of tolls, for the use of the bridge, such provision becomes an essential part of the grant, and as such, is to be strictly observed and kept, and a court of justice has no right to modify, limit or enlarge it.

The right to exercise a franchise depends entirely on the grant creating it, and contrary to the rule of law governing

contracts between private individuals, such grants are to be construed strictly against the grantee, and as giving no authority except what is expressly named in them.    3 K*ent* 459.

The grant of the County Court is similar to the charter of a corporation, and should be construed in like manner, and there is no principle of law better settled than that a corporation must derive all its powers from the acts creating it, and is confined in its operations to the mode, and manner, and subject matter prescribed.    2 *Kent* 299, 300.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Assumpsit by Fredricka A. Reed against Peter Hanger, in Pulaski Circuit Court.

The declaration alleges that:

" The defendant, etc., on the 10th of May, 1856, was indebted to the plaintiff in the sum of $300, for divers tolls and duties due, and of right payable by the defendant to the plaintiff, for the passage of divers coaches, horses and drivers, before that time, across a certain toll bridge situate in said county of Pulaski, etc., across Bayou Metre, on the main military road from Little Rock, etc., to Memphis, etc., which said bridge was used, owned and possessed by the plaintiff, and for the crossing whereof the said plaintiff had, and has lawful right to demand and receive tolls," etc., etc.

With the declaration the plaintiff filed the following bill of particulars:

" MR. PETER HANGER,

To FREDRICKA A. REED:

To toll for crossing your four-horse United States mail
coaches across Bayou Metre toll bridge on the route
from Little Rock to Aberdeen, from the 21st Aug.,
1854, to 4th June, 1855, three trips per week, (or 6
crossings per week,) at the rate of $1 per trip 114
trips ··· ···································· $114 00
To toll for crossing your two-horse United States mail
coaches across Bayou Metre toll bridge, on the route

leading from Little Rock, by the way of said toll
bridge, to Batesville, three trips per week, from the
3d of June, 1855, to the 10th of May, 1856, 135 trips
inclusive, at the rate of $1 per trip ··············   135 00

·$249 00"

The defendant filed four pleas, the fourth as follows:

" *Actio non*, because he says, that on the 10th day of April,
1838, one Thomas W. Gray obtained from the County Court of
Pulaski county, thereto duly authorized, a charter to erect and
keep a toll bridge across Bayou Metre, and at the place men-
tioned in the declaration, and for certain tolls therein specified;
and said charter to continue for the term of twenty years to
the said Gray and his heirs and assigns; and in and by which
charter it was expressly provided that the said bridge, and all
the bridges which might be by the said Gray, his heirs and
assigns, erected and kept over and across the said Bayou, under
and by virtue of the privilege granted by the said charter, shall,
and should *ever, to the citizens of said county of Pulaski, be and
remain free and open;* and the said plaintiff, by conveyance and
assignment, became the possessor of said bridge and charter,
and was such at the time the said tolls mentioned in the decla-
tion and bill of particulars accrued; and the said defendant, at
the time of the accrual of the said tolls to the plaintiff, men-
tioned in the declaration, and bill of particulars filed herein,
was United States mail contractor to carry the mail from Little
Rock to White river, three times a week and back, in four-
horse post-coaches; and also, from Little Rock to Batesville, in
two-horse post-coaches, three times a week and back, and
which tolls aforesaid accrued in that behalf, and no other; and
that the said defendant, during all the time of the passage of
the said coaches and horses and drivers thereof, across said
bridge mentioned in the declaration and bill of particulars, (and
all of which was used and necessary in carrying said United
States mail,) he, the said defendant was, and before and since
that time, has been, and still is, an actual resident of Pulaski

county, State of Arkansas; and so, under said charter, exempted from all tolls for the crossing and passage of his the said coaches, horses and drivers, across said bridge; and this he is ready to verify, wherefore, etc.

The plaintiff demurred to the plea, the Court overruled the demurrer, the plaintiff rested thereon, permitted final judgment to go against her, and appealed.

The counsel for the appellant submits that the provision in the charter, that the bridge *shall be and remain, to the citizens of Pulaski county, free and open*, is a personal privilege to the citizens themselves, but does not exempt their horses, carriages, wagons, coaches, servants, etc., from the payment of toll.

That is to say, if *Peter Hanger* thinks proper to travel on foot from Little Rock to White river, and pack the United States mail on his back, he can cross the appellant's bridge free of charge; but if he prefers to go on horse, or in a carriage, or send the mail by a servant, in a coach, he must pay toll, etc. So any citizen, finding it necessary to cross the bridge with his wagon and team, or to send them by a servant, in pursuit of his lawful business, must pay toll, etc.

Such, we think, would be an exceedingly narrow construction of the provision of the charter in question; and lead to the conclusion that the County Court intended to grant to the citizens of the county a very *poor privilege*—that of exemption from toll when passing over the bridge *on foot*.

We think the proper and only sensible construction of the provision is, that the County Court intended that the bridge should be free and open to the citizens of the county, no matter whether they passed over it on foot or otherwise, and also free for the passage of their carriages, carts, wagons, coaches, oxen, horses, servants, etc., etc., or any other means of transportation employed in their lawful business, etc.

The judgment must be affirmed.

Mr. Justice RECTOR, absent.