NAKDIMEN *v.* FORT SMITH & VAN BUREN BRIDGE DISTRICT.

Opinion delivered July 13, 1914.

1. IMPROVEMENT DISTRICTS—NATURE OF.—Local improvement districts not organized in cities and towns are governmental agencies for the purpose of carrying out certain public improvements, but they are not municipal corporations or counties within the meaning of art. 16, § 1 of the Constitution.

2. IMPROVEMENT DISTRICTS—PURPOSE OF ORGANIZATION—CONSTITUTIONAL LIMITATION.—Property owners can not be taxed for an improvement if the main purpose of the improvement was to construct a bridge for the use of a street or steam railway.

3. LOCAL IMPROVEMENT—BRIDGE—GRANT OF RIGHT-OF-WAY OVER.—An act providing that the commissioners of a bridge district might lease the use of a right-of-way over the bridge, but that the reasonable use of the bridge by the public be not interfered with, is not void.

4. STATUTES—CONSTRUCTION—RULE.—It is a fundamental rule in the construction of statutes that the act must be considered as a whole and that to get at the meaning of any part of it, it must be read in the light of the other provisions thereof.

5. LOCAL IMPROVEMENT DISTRICTS—POWERS AND DUTIES.—The powers conferred upon local improvement districts are not in any sense legislative or judicial, but are rather ministerial, and must be exercised in the manner expressly conferred. Local improvement districts have only such powers as the statute expressly gives them, or such as may arise by necessary implication to enable them to perform the duties expressly imposed upon them by the act.

6. LOCAL IMPROVEMENT—BRIDGE—GRANT OF RIGHT-OF-WAY—POWER OF COMMISSIONERS.—Section 2, Act 119, p. 325, Acts of 1909, granting to the commissioners of a bridge district "the power to grant a right-of-way over said bridge to any public utility upon such *terms* as the commission shall determine," *held* to give to the commissioners only the power to grant such right-of-way for a money consideration, and the word "terms" in the act means the time and amounts of payment.

Appeal from Sebastian Chancery Court; *W. A. Falconer,* Chancellor; reversed.

STATEMENT BY THE COURT.

I. H. Nakdimen instituted this action in the chancery court against the Fort Smith & Van Buren District and the Fort Smith Light & Traction Company to cancel and set aside a contract made by the commissioners of the bridge district with the Fort Smith Light & Traction Company. The record in the case is very voluminous and we do not deem it necessary to abstract it at length. Counsel for the bridge district has made a clear and consecutive statement of the case and we think that that statement is sufficient to present all the issues involved in the appeal. We, therefore, adopt it as our statement of the case, which is as follows:

The General Assembly of 1909 created the Fort Smith & Van Buren District for the purpose of building a free public bridge across the Arkansas River at Van Buren, and created the Fort Smith District of Sebastian County and all of Crawford County except three townships into an improvement district for that purpose. The act is No. 119 and found at page 325 of the Acts of 1909.

Section 2 gives the district power to construct and maintain a free public highway bridge at some convenient point on the Arkansas River between Fort Smith and Van Buren to be selected by the commission, and then follows this clause:

"The commission shall have the power to grant a right-of-way over said bridge to any public utility upon such terms as the commission shall determine; Provided, however, that the concessions which may be granted to

public utilities shall not interfere with the reasonable use of such bridge as a public highway.'' (Acts of 1909, p. 329).

Section 3 provides that the affairs of the district shall be managed and controlled and all improvements authorized shall be made by the commission, and then creates the commission and provides for its succession by appointment of the county courts of each county. Section 39 contains this clause:

''Section 39. The bridge district herein created shall have the power to acquire and hold real and personal property, and may receive gifts, donations and bonuses for the purpose of carrying out the object and purpose of the act, and to receive rents from the concessions heretofore authorized from the public utilities, for the purpose of construction, repair or maintenance of the public improvement herein contemplated.''

Section 53 confers authority upon the county courts of Crawford County and of the Fort Smith District of Sebastian County to take over and acquire the bridge after it is paid for ''upon such terms as may be agreed upon as to its future maintenance by said courts and the commission herein created, or their successors in office.''

Then it provides that if the bridge is not taken over, the commission is authorized, after the bridge is paid for, to levy assessments for the maintenance of the bridge so as to keep it forever open to the public.

On the third of March, 1910, the defendant Fort Smith Light & Traction Company opened negotiations with the bridge commission for a franchise to use the bridge.

At the next meeting, March 19, 1910, a proposition from the traction company was submitted and a counter proposition made by the district. Propositions and counter propositions and negotiations were had intermittently between the parties from then until March 8, 1912, when the contract in question was entered into between these two defendants.

It is not necessary to review the many propositions and counter propositions. Briefly stated, they were all for a 45-year franchise for the use of the bridge. They contemplated not only crossing the bridge, but building a street car system in Van Buren and were conditioned upon obtaining a franchise from the city of Van Buren for that purpose.

Until February, 1912, all of these propositions on either side were on the basis of a maximum charge of ten cents for fare between Fort Smith and Van Buren. On February 23 the president of the traction company submitted a written proposition offering a schedule of tolls that he was willing to pay for the use of the bridge, being $1.800 for the first five years; $2,500 for the second five years; $3,600 for the third five years and $5,000 for the fourth five years, and on a failure to agree for the remaining twenty-five years' compensation to be determined by arbitration.

Then he proposed that if, during the life of the franchise, the company have the option which it might exercise at any time that it should reduce the fare between Fort Smith and Van Buren to five cents for passenger with transfer privileges in both cities, then the company to have the privilege of operating its cars across the bridge in both directions without charge or compensation except for the operation of freight cars, for which it offered 35 cents per car.

On February 26, 1912, amended proposition was offered by the company, striking out the arbitration clause and making the last thirty years to run at $5,000 per annum.

It was further explained that five cents meant five cents for all persons over five years of age and not subject to reduced tickets of any kind unless the company elects to do so.

The commission, by a majority vote, made a counter proposition that five cents fare be charged between the cities including transfer, for free use of the bridge for forty-five years, the traction company to install trolley

and maintain tracks at their expense, and a second proposition, which was also carried by a majority vote (two of those opposing the first proposition voted "aye" on the second proposition, and two of those voting "yes" on the first proposition voting "no" on the second proposition).

The second proposition was this: That a 10-cent fare be charged, toll to be 12½ cents per car with no minimum guarantee, but that a half-hour schedule for eighteen hours per day be maintained. This proposition was also for forty-five years.

On February 29, the traction company submitted a written proposition through its manager, which was substantially the same as the proposition which had been made to it except that it included the right to carry mail and express and package freight at a cost of 35 cents per trip and the company to have the right to use the bridge for feeder wire and trolley and the use of approaches for necessary cross-overs, switch tracks and waiting stations. The traction company to erect and maintain derailing and signal devices on the approaches to the bridge for its own use.

Counter proposition was made accepting the proposition, except as to express and freight cars, the commission to guarantee that charges for them would not exceed the basis charged any other carriers for such service and the traction company to maintain tracks and trolleys and a fare of five cents between Fort Smith and Van Buren, including transfers in both cities without charge.

On March 8, the commission met and took up the proposed contract, which was considered section by section. The contract in its entirety was agreed to by unanimous vote.

The cause was heard before the chancellor upon evidence which has been properly brought into the record. The chancellor dismissed the bill for want of equity and from the decree entered the plaintiff has appealed.

*Read & McDonough* and *Winchester & Martin,* for appellant.

1. The act was held constitutional in 96 Ark. 410; 67 Ark. 37.

2. The powers of the commissioners are limited. 103 Ark. 127; 37 Ark. L. R. 495; 35 *Id.* 499; 36 *Id.* 147; 106 Ark. 39; 105 *Id.* 65, 380; 106 *Id.* 517; 104 *Id.* 427. Even the Legislature is limited in its powers over the subject of improvement districts. 103 Ark. 127. The powers of such boards can not exceed those expressly given. 86 Ark. 1; 98 *Id.* 543; 94 *Id.* 49; 97 *Id.* 334; 102 *Id.* 306; 95 *Id.* 496; 97 *Id.* 318; 36 Ark. L. R. 147; 98 Ark. 113; 83 *Id.* 34, 54.

3. The commission has no rate-making power. 111 U. S. 412; 108 *Id.* 110; 34 Sup. Ct. Rep. 400; 11 Pet. 536.

4. The contract is unreasonable, unconstitutional and void. 114 Ill. 659; 62 *Id.* 268; 98 N. W. 681; 23 Mich. 499; 80 Ark. 108.

5. The commission has no power to accept any rental except *money* rental. 2 Benj. on Sales, § 1099, note 26; L. R. 1 C. P. 186; 17 C. B. 239; 16 Pa. St. 289; 123 *Id.* 212; 37 Oh. St. 590, 460-1; 111 U. S. 412; Kirby's Digest, § 731.

6. The contract is void because it conflicts with our Constitution. 44 L. R. A. 716; Page & Jones on Tax. § § 308, 690-1; 172 U. S. 269; 34 Oh. St. 551; 61 *Id.* 16; 64 N. E. 433; 6 So. 402; 8 L. R. A. 55; 83 Ark. 275; 10 Fed. C. 1099; art. 18, § 2, Const.; 15 Ark. 43; art. 12, § 12, Const.

7. Public money is used for private gain; hence contract void. 77 Am. St. 484; 24 Atl. 156; 1 Cooley, Tax. 181; 21 Pa. St. 174; Cooley, Tax. 192-5; 87 U. S. 655; 60 Me. 124; 24 Wis. 350; 26 Mich. 429; 23 *Id.* 499; 63 Iowa 265; 69 *Id.* 384; 15 N. W. 375; 112 Am. St. 652-6; 87 U. S. 655; 33 Ark. 704; 108 U. S. 110; 14 Kan. 419; 6 So. 402; 106 Am. St. 931; art. 4, § 55, Const.; art. 15, § 15, *Id.;* 48 Ark. 370; 25 *Id.* 289; 32 *Id.* 251; 184 U. S. 115, etc.

8. It is void under the Fourteenth Amendment, Constitution U. S. Page & Jones, Tax. § 308; *Id.* 690-1;

172 U. S. 269; 18 Oh. C. C. 288; 64 N. E. 433; 184 U. S. 115; 230 *Id.* 139; 227 *Id.* 278; 172 *Id.* 269.

9.   The traction company can not use bridge without compensation. 68 Atl. 846; 79 *Id.* 161; 148 U. S. 92; 79 Atl. 567; 26 S. E. 913; 37 N. J. L. 254; 60 Kan. 848; 91 Mass. 563; 61 L. R. A. 249; 54 N. Y. 507; 15 L. R. A. 828; 37 Wis. 400; 1 Cooley, Tax. 196; 44 L. R. A. 716.

10.   The contract is without consideration and void. 3 Ell. R. R., § 1096; 41 L. R. A. 337; 78 N. E. 338; Const., art. 17, § 3-6; Kirby's Dig., § § 6804-7-8, 6827.

11.   The alleged indirect benefit of a five-cent fare is no benefit. 101 Ark. 225; 16 L. R. A. 651; 103 Ark. 452; 98 *Id.* 543; 99 *Id.* 100; 97 *Id.* 322; 83 N. W. 851.

12.   Bridges are not streets. Navigable streams are under the control of the U. S. 21 Atl. 790; 85 Pa. St. 163; 144 Ill. 569; 83 N. W. 851.

*Hill, Brizzolara & Fitzhugh,* for appellees.

1.   The use of the bridge is a benefit and the contract is beneficial. Cheap transportation and building up a country is a benefit. A reduction of fare is compensation. 94 U. S. 324, L. Ed.; 229 *Id.* 1248. No power is given city councils to regulate street car rates. Kirby's Dig., § 4445-7.

2.   The real question in the case is simple; the power of the commission. 101 Ark. 223-8; 107 Wis. 493; 83 N. W. 851; 80 Ark. 108; 199 U. S. 306. The commission was delegated full power to build a bridge, levy assessments, sell bonds, manage the district and let such public utilities use the bridge on such terms as they may determine. 101 Ark. 223; 3 Dill., Mun. Corp., § 1230; 159 Pa. St. 411; 199 Mass. 279; 110 N. Y. 548; 178 Ill. 594; 99 Ark. 178; 207 U. S. 79.

3.   The act of Congress is wholly outside this case. 34 Stat. at Large 85.

4.   The contract is just and reasonable, and the commission had power to accept other than rental money. The contract is not improvident. 96 Ark. 410; 81 *Id.* 208; 96 Ark. 410; 104 *Id.* 425; Const., art. 2, § 18, and art.

5, § 12. These do not apply to improvement districts. 59 Ark. 533; 69 *Id.* 284; 96 *Id.* 410; 103 *Id.* 452; *Ib.* 127; 104 *Id.* 425; Dillon, Mun. Corp., 884 (508); 32 L. R. A. 610; 44 N. E. 446; 30 App. Div. 266; 131 Mass. 23; 40 Mass. 71.

5. The amount of compensation is sufficient.

HART, J., (after stating the facts). The constitutionality of the act under which the bridge in question in this case was constructed was sustained in the case of *Shibley et al.* v. *The Fort Smith & Van Buren District,* 96 Ark. 410. We held in effect in that case that the benefits derived from the construction of the bridge were local in their character, and that the purpose and effect of the building of the bridge was to improve the particular locality embraced within the limits of the improvement district, and that the costs might properly be assessed against the locality benefited. In the case of *Crane* v. *Siloam Springs,* 67 Ark. 37, the court said:

"If we look for the technical or legal meaning of the phrase 'local improvement,' we find it to be a public improvement, which, although it may incidentally benefit the public at large, is made primarily for the accommodation and convenience of the inhabitants of a particular locality, and which is of such a nature as to confer a special benefit upon the real property adjoining or near the improvement." That is to say, the fact that there is some benefit to the public does not prove that an improvement is not a local one which may be properly paid for by special assessment.

It is urged by counsel for the plaintiff that if the act under consideration confers upon the commissioners of the bridge district power to grant a right-of-way to the Fort Smith Light & Traction Company, in consideration of a reduced fare, that this renders the act unconstitutional. This argument we consider more in the nature of an attack upon the soundness of our former opinion, holding that the act under which the district was organized was valid. For instance, counsel, to sustain their contention in this respect, mainly rely upon the case of *Garland* v. *Board of Revenue of Montgomery County,* 87 Ala. 223.

In that case the act provided for the construction of a bridge across the Alabama River and authorized the board of revenue of Montgomery County to make said bridge either a free foot and wagon bridge for the traveling public, or a railroad bridge or both combined. Under the act, the board authorized the issuance of bonds for a foot and wagon bridge and railroad bridge combined. The court held that the act under which they proceeded was in violation of section 55, article 4, of the Constitution, which declares:

"The General Assembly shall have no power to authorize any county, city, town or other subdivision of this State, to lend its credit, or to grant public money or thing of value, in aid of, or to any individual, association, or corporation whatever, or to become a stockholder in any such corporation or company, by issuing bonds or otherwise."

The Supreme Court of Alabama held in effect that the improvement district created by the act was a subdivision of the State within the meaning of the Constitution, and that the issuance of the bonds for the purpose of building a bridge for a railroad was a loan of credit or grant of money or thing of value in aid of a private corporation and fell under the ban of the section of the Constitution above quoted.

Our Constitution, art. 16, § 1, is as follows:

"Neither the State nor any city, county, town or other municipality in this State shall ever loan its credit for any purpose whatever; nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the present existing indebtedness, and the State shall never issue any interest-bearing treasury warrants or scrip."

(1)    In the case of *Fitzgerald* v. *Walker*, 55 Ark. 148, the court held that an improvement district is not a municipality nor the agent of one within the meaning of this section. We have always held that levee districts and

other local improvement districts not organized in cities and towns are governmental agencies for the purpose of carrying out certain public improvements, but that they were not municipal corporations or counties. *St. Louis, I. M. & S. Ry. Co. v. Board of Directors of Levee District of Jackson County,* 103 Ark. 127, and cases cited. In that case the previous decisions on the question were cited and reviewed. A comparison of the section of our Constitution, above quoted, with that quoted from the Alabama Constitution, will show that they are essentially different in that the section of our Constitution referred to does not contain the words "or other subdivision of this State," in connection with the words "county, city or town." For this reason we do not think the Alabama case is an authority tending to show that our former opinion was not sound, or that the position now assumed by counsel for the plaintiff is correct. In the Alabama case, at the conclusion of the opinion, the court said:

"We do not mean to intimate that the Legislature has no power to authorize the counties named in the act to erect a foot and wagon bridge across the Alabama River. Neither do we decide that the counties and a railroad company may not be authorized to erect jointly a foot and wagon and a railroad bridge combined, each paying their proportion of the cost, and owning separately their respective interest in the property. This question is not presented by the record and we leave it open."

In considering the constitutionality of the act in question on the former appeal, we had grave doubts as to whether it was in conflict with art. 2, § 22, of our Constitution, which is as follows:

"The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor."

(2) If the main purpose of the act was to enable the bridge commissioners to construct a bridge for the use of a street railway or a steam railroad, it is manifest that the property owners could not be taxed for that purpose,

for that would be to take their property for a private use
and would be in contravention of the clause of our Con-
stitution last quoted.

(3) In the opinion on the former appeal, the court
said:

"The bridge is to be constructed for the use of the
general public, and the provision for setting apart of cer-
tain space to the use of public utility corporations for hire
is a mere incident. This gives an enlarged use of the
bridge by the public, and we perceive no reason why this
provision should be held to vitiate the statute. The en-
larged use of the bridge augments the benefits to the
property affected thereby—at least—the Legislature had
the power so to determine, and it does not impose on the
tax payers the burden of constructing an improvement
for the use of the corporations. The entire use of the
bridge is, after all, for the benefit of the public, and the
benefits are special to the property affected thereby
within the sense that it is a local improvement." We ad-
here to the views there expressed.

We have carefully examined the record in the pres-
ent case and there is nothing to show that the commis-
sioners of the bridge district were actuated by bad faith
in making the contract with the traction company now un-
der consideration. It is clearly apparent from the record
that they acted in good faith and made the contract be-
cause they thought it was for the best interest of the
owners of the property within the district, and because
they believed the act under which they were proceeding
conferred upon them the power to make the contract. In
our opinion, the sole question involved by this appeal is
whether or not the act in question conferred upon the
commissioners of the bridge district the power to make
the contract. The commissioners proceeded under sec-
tion 2, of the act, which authorized them to construct and
maintain a free, public highway bridge at some conven-
ient point on the Arkansas River between the cities of
Fort Smith and Van Buren, to be selected by them, and
then follows this clause:

"The commission shall have the power to grant a right-of-way over said bridge to any public utility upon such terms as the commission shall determine; provided, however, that the concessions which may be granted to public utilities shall not interfere with the reasonable use of such bridge as a public highway."

It is the contention of counsel for plaintiff that the act by its terms does not confer upon the bridge commissioners the authority to grant to the street railway a right-of-way over the bridge in consideration that, the railway company shall charge a reduced rate of fare. On the other hand, it is contended by counsel for the defendants that the language of the act does confer upon the commissioners the power to grant a right-of-way to the street railway company in consideration that the latter charge the public a reduced rate for traveling over the bridge.

(4) It is a fundamental rule in the construction of statutes that the act must be considered as a whole, and that to get at the meaning of any part of it we must read it in the light of the other provisions thereof.

Counsel for the defendants seeks to uphold the decree on the authority of *Linden Land Company* v. *Milwaukee Electric Railway & Lighting Company,* 107 Wis. 493, 83 N. W. 851. In that case the city of Milwaukee granted a franchise to a street car company to operate its railway in some of the streets of the city. Later an additional ordinance was passed by which a right-of-way was granted to the street car company over additional streets, so that when the lines were built upon them there would be a continuous system throughout the whole city. The consideration was that the street car company should charge the public a reduced fare. A taxpayer's suit was brought charging that this was a squandering of public money and a surrender of property and rights of city and an unlawful increase in the burden of taxation. It was also contended that the ordinance was unconstitutional and without consideration. The court said:

"It seems very plain to us that this action of the council can not be called, in any proper or reasonable sense, a squandering of public funds or property. By section 1862, Statutes 1898, the city is empowered to grant the use of streets and bridges to street railway corporations upon such terms as the proper authorities shall determine. Here is a broad grant of discretionary powers. The question before the council was, what terms shall be attached to the grant? Is it more beneficial to the public to secure a cash payment or payments which will benefit taxpayers only, or to secure lower rates of fare for the public generally, or to impose other conditions? After exercising this discretion, and deciding that the terms imposed should be a gradual reduction of fare, rather than payments of money into the treasury, it can not be said that any city fund has been squandered, lost or misused. Whether the city should receive any fund was a question for the council, in its discretion, to decide. When it decided that there should be no fund, but that reduced fares or other limitations upon the grant were more desirable for the public, it may or may not have exercised good discretion, but it has dissipated no city fund or property."

We do not think that case is an authority to uphold the contract. As was said in *Altheimer* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 234, speaking of a levee district, "Its powers can not be likened to those of municipal corporations, whose powers are broader and more general within their prescribed territory and over the subjects delegated to them."

Again, in the case of *Little Rock Railway & Electric Company* v. *North Little Rock,* 76 Ark. 48, the court held that a city had no property interest in the streets, but that it is a mere agent of the State to whom the State has delegated control of the streets and that the State, in the first instance, and the city, in the second instance, is but a trustee for the public.

(5)    The powers conferred upon local improvement districts are not in any sense legislative or judicial, but

are rather ministerial powers and duties which must be exercised in the manner expressly conferred. They have only such powers as the statute expressly gives them or such as may arise by necessary implication to enable them to perform the duties expressly imposed upon them by the act. *St. Louis, I. M. & S. Ry. Co. v. Board of Directors of Levee District of Jackson County, supra.*

In the case of *Fitzgerald* v. *Walker, supra,* the court said that an improvement district is not in any sense the agent of a city or town within which it is organized. That its powers are derived directly from the Legislature, and in exercising them the board acts as the agent of the property owners whose interests are affected by the duties it performs. It is true that in the section of the statute under consideration, language is used similar to that employed in the Wisconsin statute, but the powers delegated to a city over the streets is different from that granted to the commissioners of a local improvement district, and such power is granted to accomplish a different purpose. While in the construction of statutes, the chief aim is to arrive at the intention of the Legislature, as indicated by the language used in framing the act, still the object sought to be accomplished may be considered. In the application of these principles it may be said that the city council of Milwaukee in passing the ordinance granting to the street railway a right-of-way over additional streets, in consideration that the street railway company charge the public a reduced rate of fare for riding over its lines, was acting as a trustee for the whole public, and the reduction in fare was a direct benefit to the public for whose benefit the council was acting. The Milwaukee council being the agent of the public, the court held that, the act in conferring upon it the power to grant the use of streets to a street railway company upon such terms as it should determine, a broad discretion was given it in deciding what should be most beneficial to the public. In the act under consideration, the bridge commissioners were acting as agents for the property owners of the district and for their benefit only, and not for the benefit of

the whole public. The commissioners have and can control only such powers as the statute expressly gives them or such as arise by necessary implication. In *Altheimer v. Plum Bayou Levee District, supra,* the court said, with reference to local improvement districts, that they are called into being to perform a specific function and no other, and that their powers must be found in the strict letter of the law which creates them. Continuing, the court said:

"Such an agency of government is *sui generis,* and its powers can not be likened to those of municipal corporations, whose powers are broader and more general within their prescribed territory and over the subjects delegated to them. They exercise no governmental powers except those expressly granted by the legislative authority which called them into existence, and then only in the manner pointed out expressly or by fair implication."

(6) When all these principles of law are considered and when section 2 of the act under consideration is read in the light of the other provisions of the act, and the objects sought to be accomplished by the Legislature, we are of the opinion that when the Legislature gave the commissioners power to grant a right-of-way over the bridge to any public utility company on such terms as the commissioners shall determine, it only meant to give them the power to grant such right-of-way for a money consideration, and the word "terms" used in the act means the time and amounts of payment. The authority conferred upon the commissioners is analogous to the powers given by a letter of attorney. That is to say, the State was prescribing to the commissioners as its agents the power they should exercise. In the application of the law of principal and agent, it is well settled that, if the former executes to the latter a power of attorney conferring upon the agent the authority to sell the principal's land upon such terms as the agent should deem best, the agent would only have had the authority to sell for cash, and the word "terms" in such connection, in ordinary acceptation, means the time and amounts of pay-

ment.  The Legislature delegated to the commissioners the authority to keep up and maintain the bridge and to levy taxes for that puprose.  The framers of the act evidently knew that money would be needed in maintaining and repairing the bridge and in the section of the act under consideration, we are of the opinion that the intention of the Legislature will be effectuated by construing the act in a restricted sense.  That is to say, we hold that the commissioners, under section 2 of the act, could only receive money for the grant of the right-of-way to the street railway company, and that the word "terms" has reference to the time and amount of money paid, but that a discretion was left to the commissioners as to the amount of money to be charged therefor, and the times of payment thereof.

It follows that the chancellor erred in dismissing the complaint of the plaintiff, and, for that error, the decree will be reversed and the cause remanded for further proceedings in accordance with this opinion.

### DISSENTING OPINION.

McCULLOCH, C. J.  The majority of the court are wrong, I think, in construing the language of that part of the statute which authorizes the commission to grant a right-of-way over the bridge to public utility corporations.  They construe the words "upon such terms as the commission shall determine," to mean only that there may be a letting of the privilege for a consideration payable in money.  No such limitation is found in the statute.  On the contrary, the lawmakers have used the broadest kind of a phrase in giving expression to the authority conferred upon the commission.  The only limitation placed upon that authority is that concessions to public utility corporations "shall not interfere with the reasonable use of such bridge as a public highway," and the maxim *expressio unius est exclusio alterius,* applies to that limitation.

The majority cite not a single authority supporting the view that the language used in the statute refers,

when reasonably interpreted, merely to a renting for money. That view of the question is, I think, totally at war with the theory upon which we upheld the constitutionality of this part of the statute creating the improvement district for the purpose of constructing the bridge. *Shibley* v. *Fort Smith & Van Buren District,* 96 Ark. 410. We said in the opinion in that case that the provision for allowing space for use by public utility corporations ''gives an enlarged use of the bridge by the public,'' and that ''the enlarged use of the bridge augments the benefits to the property affected thereby—at least, the Legislature had the power so to determine, and it does not impose on the taxpayers the burden of constructing an improvement for the use of the corporations.'' We had no thought at that time—at least, as far as the language of the opinion indicates—that we were upholding that provision of the statute merely as a money-making scheme, and it seems to me now that if the decision of the majority is correct, we ought to have declared that feature of the statute to be beyond the power of the lawmakers, and void.

The only case cited on the question by the majority (*Linden Land Company* v. *Milwaukee Electric Railway & Lighting Company,* 107 Wis. 493), fully sustains the view that the power conferred upon the bridge commissioners is much broader than that allowed by the majority in this case, and that the contract made with the defendant is not in excess of that power. The Wisconsin statute provided that a ''city is empowered to grant the use of streets and bridges to street railway corporations upon such terms as the proper authority shall determine.'' The language is identical with that used in our statute, except that there the power was conferred upon the city council, and here it is conferred upon the commissioners of the bridge district. The city council of Milwaukee granted a franchise to a street railway company for the use of the streets, the only consideration being a limitation upon the price of fares, and refused a grant to other corporations for money consideration. The Su-

preme Court of that State, in construing the language
of the statute and in upholding the franchise, used the
language quoted in the opinion of the majority, and it
states, I think, the principle which should control in this
case.   The majority say that while the decision of the
Wisconsin court may be correct in construing a statute
conferring power on a city council, the same rule of con-
struction does not obtain in interpreting the will of the
lawmakers with reference to power conferred upon the
commissioners of an improvement district.   They cite
some of our decisions holding that the commissioners of
an improvement district possess only such power as is
given by statute expressly or by necessary implication,
and that those powers "can not be likened to those of
municipal corporations, whose powers are broader and
more general within their prescribed territory and over
the subjects delegated to them."   It is unquestionably
true that broader power is, under the statutes of this
State, conferred upon municipal corporations than upon
improvement districts, but that does not alter the rules of
construction to be followed in interpreting the language
of the Legislature in conferring power to carry out the
objects of the organization.   It may be conceded that the
commissioners act merely in a ministerial or an execu-
tive capacity, but that does not alter the rule of interpre-
tation when we come to analyze and interpret the lan-
guage of the statute conferring power upon those agen-
cies.   When the Legislature authorized the commis-
sioners of the Fort Smith & Van Buren Bridge District
to grant a right-of-way to any public utility corporation
"upon such terms as the commission shall determine," it
seems clear to me that they meant to repose in the com-
mission a large measure of discretion in determining
what should be the consideration for the grant.   The only
limitation is that expressed in the statute itself, and also
the one necessarily implied that the grant should be for
the public benefit.   The majority have reached the con-
clusion that there was no fraud on the part of the mem-
bers of the bridge commission, nor collusion with the

street car company, for the purpose of entering into an unjust or improvident contract. In fact, there is no hint in the opinion that the court concludes that the contract is at all improvident, but the law is laid down broadly that the contract, even though made in the utmost good faith, is void because the commission did not exact a money consideration. The opinion of the majority is unfortunate, I think, in drawing an analogy between the power conferred upon a public agency of this kind and a private agent for the purpose of handling the property of another. Conceding the soundness of the oft-repeated rule announced by this court, that officers of an improvement district are public functionaries who possess no power except that granted by the statute, it does not follow that in interpreting the language of the lawmakers in conferring that power, analogy can be drawn between the language of a contract of agency between private parties. The authority of a public agency moves in an entirely different zone from that occupied by private contracts, and the comparison is inapt. An individual, in appointing an agent to manage his property, reserves the right to supervise the acts of his agent and it is necessarily implied that when authority is given to sell or lease property, or contract otherwise with reference to it, a money consideration is the thing in contemplation. Not so, however, with a public agency clothed with large powers to act for the benefit of the public, and a degree of discretion is necessarily implied unless the authority is restricted by apt language with reference to the method of doing the thing authorized.

My view of the matter is that the statute authorized the commission to grant a franchise upon the terms embraced in the contract with defendant, and that there was no fraud or misconduct that would authorize a court of equity in setting it aside. Therefore, I dissent from the conclusions announced by the majority.

SMITH, J., concurs in this dissent.