FORT SMITH LIGHT & TRACTION COMPANY

*v*. WILLIAMS.

Opinion delivered June 13, 1921.

1.  BRIDGES—VALIDITY OF ACT CREATING DISTRICT.—Acts 1909, No. 119, p. 325, creating the Fort Smith and Van Buren Bridge District, is valid.

2.  BRIDGES—RIGHT TO EXACT TOLLS.—The right to exact tolls of the public for the privilege of crossing a public bridge must be conferred by statute, or it does not exist.

3.  BRIDGES—VALIDITY OF STREET CAR TOLLS.—Under Acts 1909, p. 325, creating the Fort Smith and Van Buren Bridge District, and act No. 233 of 1913, amending same, and authorizing the bridge district to grant a right-of-way over the bridge upon such terms as might be provided by contract between the bridge district and the street car company, a contract between the bridge district and the street car company by which the latter was to charge a certain fee for transporting passengers over the bridge and to pay a stipulated portion thereof to the bridge company in payment for the right-of-way over the bridge is valid.

Appeal from Sebastian Chancery Court, Fort Smith District; *J. V. Bourland,* Chancellor; reversed.

*J. B. McDonough,* for appellant.

1.   The contract is a valid and binding contract under § 2 of act 119, Acts 1919, p. 328. See Acts 1913, pp. 1003-4. The validity of the act is settled in 115 Ark.

194-209. The traction company, as the evidence shows, complied with act 571, Acts 1919, p. 411. The contract is valid, as it provides for a *money consideration* and for the *time* and *amounts* of payment, and the act is valid. 140 Ark. 597. The traction company is the common carrier. The collection of fares makes the person a passenger of the traction company. Michie on Carriers, pp. 1503, 1491; Nelle's Street Railways, § 248. The bridge district is not a common carrier. Collectors of fares are agents of the traction company and of the bridge district. Legally, the traction company is compelled to collect the charge and can collect no more nor less. Act 571, Acts 1919; C. & M. Digest, §§ 849, 850, 917-18-19 and 1631. It performs the service and owns the compensation. The traction company is a common carrier, and to sell at a reduced rate to one class and deny it to others is a violation of constitutional rights. 173 U. S. 684. Hence it can not sell its service to landowners at one price and to non-landowners at another. This suit is an indirect, if not a direct, attack on 115 Ark. 194. A street car company is a common carrier. Beale & Wyman on Railroad Rate Regulations, § 188; 173 U. S. 684. No street car company can discriminate in its charges between passengers. 96 Ark. 410; 98 *Id.* 543; 119 *Id.* 254. The increase of value of the assessments is the sole basis for these assessments. 89 Ark. 513.

2. Sound reason supports the arrangement in the contract. A toll is a charge made against a person who walks or travels in his own conveyance over a bridge. 30 N. J. L. 447.

A common carrier has a right to refuse any ticket, detached and presented in violation of the rule that a ticket is not transferable. 77 Tenn. 180; 82 Va. 250; 51 Atl. Rep. 406; 3 Michie on Carriers, p. 2442.

The right of the State or district to charge a rental is well settled. 96 Ark. 410; 115 *Id.* 194; 79 Atl. Rep. 161.

3. The evidence does not support the findings of the chancellor. The act of 1919 prohibits discrimination.

See Acts 1919, p. 325. The act has been construed by our court. 96 Ark. 410. The right to charge public utilities for the use of the bridge is settled. 113 Ark. 493. See 94 Atl. Rep. 988; 44 *Id.* 385; 113 Ark. 493.

4. The court erred in refusing to admit testimony to show that plaintiffs were not the real parties in interest, but the real question is whether the contract is valid.

*Hill & Fitzhugh,* for appellant also.

The contract is within the Nakdimen decision. 115 Ark. 194. No statute has been changed since that session.

*Webb Covington,* for appellees.

The chancellor properly held the contract was *ultra vires* and *void.* 79 Ark. 234; 115 Ark. 207-9.

The right to demand tolls of the public for crossing a bridge exists only by reason of statutory enactment. 76 Ga. 644. No toll can be demanded not lawfully within the franchise. 26 Me. 326; 11 Am. Dec. 170. Nothing passes in legislative grants to corporations but what is granted in clear, unequivocal and explicit terms. 15 Wallace (U. S.) 500; 101 *Id.* 71. See, also, 9 Howard (U. S.) 172; 20 Ark. 625.

WOOD, J. This action was brought by the appellees, residents and real property owners of the Fort Smith and Van Buren Bridge District (hereafter called bridge district), against the bridge district and the Fort Smith Light & Traction Company (hereafter called traction company). The traction company is an Arkansas corporation engaged in the operation of a street railway in and between the cities of Fort Smith and Van Buren. The cars of the traction company run upon and over the bridge of the bridge district which spans the Arkansas River between the cities of Fort Smith and Van Buren. The appellees alleged that the bridge district was requiring of them and other owners of real property in the bridge district to pay a bridge fare or toll of 1¼ cents for each ticket purchased or five cents per passenger cash fare if no ticket had been purchased; that the traction company permitted the agents of the bridge dis-

trict to collect the fares; that no charge was made against any person for crossing the bridge except those who were passengers of the traction company; that appellees and other real property owners of the bridge district were taxed for the construction and maintenance of the bridge, and this bridge fare against them was discriminatory and illegal because other passengers of the traction company who were not owners of real property in the bridge district were allowed to cross over the bridge on the traction company's cars upon the payment of the same fare or toll as that paid by the appellees and other real property owners in the bridge district. The appellees further alleged that the bridge district was not collecting from the traction company any sum whatever for the use of the bridge; that all sums realized by the bridge district from the bridge fares collected from passengers on the cars of the traction company crossing the bridge were paid by the appellees and other passengers of the traction company, and not by the traction company; that the bridge had therefore been converted by the bridge district into a toll bridge contrary to the provisions of the act creating the bridge district.

The appellees instituted the action for the benefit of themeselves and all others similarly situated, and prayed that the bridge district and the traction company be restrained from charging and collecting the bridge fares mentioned.

The bridge district and the traction company answered separately, setting up substantially that the act creating the bridge district and act 233 of the Acts of 1913 amending the same authorized the bridge district to grant a right-of-way over the bridge upon such terms as might be provided by contract between the bridge district and the public utility, which contract was required to be submitted to the electors of the bridge district through referendum; that a contract was entered into by the bridge district and the traction company which was duly submitted to the legal voters through referendum as provided by the act and was ratified and ap-

proved by them; that the bridge district and the traction company were complying with the terms of that contract, and they set up the contract as a justification for the charges of which the appellees complain and as a complete defense to their action. The contract was made an exhibit, and attached to the answers, and was proved and introduced in evidence.

The contract is too long to set forth *in haec verba.* It is in sections, and we will abbreviate and state in substance such of its provisions as we deem necessary.

In the first section the bridge district, for the considerations thereinafter named, grants to the traction company the right to use the free bridge and its approaches for the term thereinafter mentioned for the transportation of its passengers. This section specifically sets forth the things that the traction company is authorized to do in order to enable it to operate its passenger cars across and over the bridge and its approaches. It also specifically sets forth the things which the traction company is not authorized to do, confirming what had already been done by the traction company under a former contract and reserving in the bridge district the right to supervise and approve such improvements as the traction company should make in the future.

In the second section it is expressly agreed that, in consideration of the execution and performance of all of the terms of the present contract, any and all claims of the bridge district growing out of the use of the bridge and its approaches by the traction company prior to the execution of the present contract are waived. If the contract is not performed, then the bridge district does not relinquish its claim for rentals under former contract.

The third section contains reciprocal obligations by which the bridge district is to maintain the bridge and its approaches in good condition, and the traction company is to maintain in good condition its rails, wires, railway feeders, and ties on the approaches to the bridge.

The fourth section provides that the traction company shall not have exclusive use of the bridge, and that the trolley erected by the traction company may be used by any other public utility upon payment of just compensation, and that the use of the bridge by the traction company shall not interfere with the use of the bridge as a public highway.

By the fifth section the traction company agrees to maintain a schedule of cars, and the bridge district permits the traction company to stop its cars at both ends of the bridge to receive and discharge passengers, "but in so doing there shall be collected, as hereinafter provided, a fare for the benefit of the bridge for every passenger who rides over the bridge or any part thereof, or any part of the approaches thereto. It is expressly agreed that the traction company shall aid the bridge district to collect the fare for the benefit of the district and shall do nothing which will tend to defeat the right of the district to collect the rental by way of fare as herein provided. The fare collected for the benefit of the district is the rental to be paid by the company for the use of the bridge. The method of collecting the fare in no manner changes the fact that said fare collected for the bridge district is a rental paid by the traction company for the use of the bridge. The company will therefore aid in every way the collection of a fare of $1\frac{1}{4}$ cents from each passenger, if the fare be a bridge ticket, and, if the fare be cash, the sum of five cents for each passenger. Said fare, when so collected, shall entitle the passenger to ride across and over the bridge and the approaches one way for each fare. The traction company will not maintain any station for the taking up or setting down of passengers at any point on the bridge or on the approaches, and will not take up or set down passengers on the bridge or its approaches unless said passenger pays the bridge fare as above provided."

By the sixth section the traction company agrees, "in consideration of the rights herein granted, that it will not permit any one except as herein provided to ride

as a passenger on its said cars across the said bridge without permitting said bridge district to collect from each of said passengers a bridge ticket or cash fare as provided in this contract. The bridge district, through its employees as herein provided, will take up and collect from each passenger either a bridge ticket for 1¼ cents or a cash fare of five cents for each passenger, and the employees of the traction company, if necessary, will aid the collectors of the bridge district in collecting such ticket or fare from each and every passenger as herein provided."

Sections seven and eight relate to the means and methods used by the collectors of the bridge district in collecting the fares.

Section nine again provides that the fares when collected shall be full compensation for the use of the bridge and the approaches by the traction company and exempts certain employees of the traction company from payment of fares, and then provides that the traction company will not give to any passenger who stops on the bridge or its approaches a transfer enabling him to ride on a car after he has walked across the bridge.

Section ten provides for the printing of tickets at the expense of the traction company under the supervision of the bridge district and the delivery of the printed tickets in packages to the bridge district and the purchase of these tickets by the traction company from the bridge district, the traction company paying 1¼ cents cash for each ticket. If, at the termination of the contract, the traction company has on hand any tickets, the bridge district agrees to redeem them at the price the traction company paid for same. This section also contains a provision to the effect that all sums of money paid by the traction company to the bridge district for tickets and the cash fares collected "shall be deemed rentals for the use of the bridge and is the funds and property of the bridge district."

Section eleven provides that the tickets shall be in books containing twenty tickets each to be sold by the traction company at twenty-five cents per book, the tickets not to be transferred or transferrable.

By section twelve the traction company binds itself to pay $50 per month toward the salary of bridge fare collectors if the cars crossing the bridge are operated by two men, or $100 per month if the cars are operated by one man.

The thirteenth section makes the traction company responsible to the bridge district for any damage it may do to the bridge or its approaches.

By section fourteen the bridge district binds itself to charge all other public utilities a reasonable toll or rental as the law requires for the use of the bridge.

Section fifteen prescribes the period of duration of the contract.

Section sixteen makes it the duty of the bridge district to keep the books and accounts with reference to the bridge tickets and bridge cash fares collected, and exempts the traction company from responsibility for any of the acts of the collectors or bookkeepers, who, under the terms of the contract, are the agents of the bridge district.

One of the appellees lived in Fort Smith, and the other in Van Buren. Their testimony was to the effect that each paid the traction company seven cents as passenger fare for transportation over its lines in the cities of Fort Smith and Van Buren, and an additional fare of $1\frac{1}{4}$ cents each to the bridge checkers on the free bridge while on the street cars if a ticket is used, or five cents cash without a ticket. They own real property in the bridge district and each pays annually the sum of $1.35 as a bridge tax. In buying a ticket from the traction company from Fort Smith to Van Buren they each had to pay $8\frac{1}{4}$ cents if they used a bridge ticket, or twelve cents without a bridge ticket. The bridge fares are col-

lected at each end of the bridge by collectors who get on the cars at the respective ends, ride across, and take up the fares at the other end of the bridge.

There was testimony to the effect that the conductors of the traction company on the cars had nothing to do with the collection of the bridge fares.

D. C. Green testified that he was the general manager of the traction company; that the traction company had a regular tariff of fares on each passenger on cars between the two cities. This schedule of fares is on file with the Corporation Commission as required by law. His testimony and the schedule show that the fares were as above indicated, and that children under twelve years of age were charged four cents. Green testified that the seven cents covered the transportation charges from any point in Van Buren to Garrison Avenue in Fort Smith with free transfer privileges. In other words, a man gets on the car at the smelter in Van Buren and pays seven cents and can transfer to any point within the city limits of Fort Smith. An additional fare of five cents is collected from each passenger crossing the bridge for a cash fare. The traction company did not charge any more than was set forth in its standard public schedule. This schedule was introduced in evidence by the appellees, and it showed that the fares were as above indicated.

There is a provision in the schedule under the title of "Bridge Contract" as follows: "Under contract as entered into with the Fort Smith and Van Buren Bridge District, bridge collectors selected and employed by the bridge district board the cars at or near the approach of the bridge and collect from each passenger crossing the free bridge between Fort Smith and Van Buren five cents in cash or one bridge ticket, and the money thus collected from the passengers is retained by the bridge district."

There was testimony on behalf of the appellees to the effect that the deputy sheriff, who was employed by

the bridge district to clean and repair the bridge, some times in cases of necessity assisted the collectors in the collection of fares.

The assistant secretary of the collector of taxes testified that he was the custodian of the records in the collector's office and kept all contracts with public utilities using the bridge. There was no contract with any public utility other than the traction company. The district made charges against persons regardless of the kind of transportation for crossing the bridge. It charged taxicabs and other concerns that carried passengers for pay.

It was admitted that the contract in evidence had been ratified by the legal voters of the bridge district under the referendum provided by special act. Upon the above issues and facts, the court decreed "that the aforesaid contract is *ultra vires* and void; that the taking of said fares by the district is contrary to law. Therefore, the said Fort Smith and Van Buren District, its commissioners, agents, employees and representatives are perpetually enjoined from taking, receiving, or attempting to take or offer to receive said fares under said contract." From that decree is this appeal.

The bridge district was created under act 119 of the Acts of 1909, page 325. The act is valid. *Shibley* v. *Fort Smith & Van Buren Bridge District,* 96 Ark. 410; *Nakdimen* v. *Fort Smith & Van Buren Bridge District,* 115 Ark. 194. Section 2 of the act provides in part as follows: "The commission (of the bridge district) shall have the power to grant a right-of-way over said bridge to any public utility upon such terms as the commission shall determine, provided, however, that the concessions which may be granted to public utilities shall not interfere with the reasonable use of such bridge as a public highway."

Section 39 of the act is in part as follows: "The bridge district herein created shall have the power * * * to receive rents from the concessions heretofore author-

ized from the public utilities for the purposes of construction, repair, and maintenance of the public improvement herein contemplated.''

Section 2 of the act was amended by the Legislature of 1913, act 223 of the Acts of 1913, page 1001, so as to read in part as follows: ''The commission shall have the power to grant a right-of-way over said bridge to any public utility upon such terms as the commission shall determine, provided, however, that the concessions which may be granted to public utilities shall not interfere with the reasonable use of such bridge as a public highway. Provided, further, when the commission and the public utility shall agree upon a right-of-way or concession over the bridge to be enjoyed by any public utility, a contract setting forth fully the terms thereof shall be signed by the commission and the public utility subject to a referendum thereon.''

There are further provisions in the amendatory act providing for carrying the referendum into effect, and the amendatory act also provides: ''That no exclusive privileges shall be granted under this section or any other provision of this act to any such public utility.''

In *Nakdimen* v. *Fort Smith and Van Buren Bridge District, supra,* construing section 2 of the original act, we said: ''We hold that the commission under section 2 of the act could only receive money for the grant of the right-of-way to the street car company, and the word 'terms' has reference to the time and amount of money paid, but that a discretion was left to the commission as to the amount of money to be charged therefor and the terms of the payment thereof.''

Learned counsel for appellees has made a vigorous attack upon the contract under review, the gist of his contention being that under the contract, as he construes it, the bridge district has granted to the traction company a right-of-way over the bridge for which the bridge district ''forces the traveling public to pay tribute and designates the money thus received rental paid by the

company." To support his contention counsel relies mainly upon the case of *Perrine* v. *Chesapeake & Delaware Canal Co.*, 9 Howard 172. In that case the canal company was granted a charter by Maryland, Delaware and Pennsylvania to cut and maintain a canal connecting the Chesapeake and Delaware bays. The charter gave the company the right to collect tolls on certain articles on vessels carrying commodities, enumerating the articles and the tolls thereon. Empty boats or vessels were required to pay $4, "except an empty boat or vessel returning whose load has already paid the tolls fixed, in which case she shall pass toll free." The eleventh section of the charter provided: "The said canal and works to be erected thereon by virtue of this act, when completed, shall forever thereafter be esteemed. and taken to be navigable as a public highway free for the transportation of all goods, commodities or produce whatsoever on payment of the toll imposed by this act, and no tax whatsoever for the use of the water of the said canal, or the works thereon erected, shall at any time hereafter be imposed by all or either of the said States." Perrine proposed to install a line of passenger boats through the canal, and the company required him to pay a toll of $1 for each passenger. Perrine resisted the payment of this toll, and the Supreme Court of the United States held that the company had no right under its charter to demand toll from passengers who passed through the canal, or from vessels on account of the passengers on board; that the company could only exercise the powers conferred upon it by its charter.

Counsel also relies upon the case of *Reed* v. *Hanger,* 20 Ark. 625. In that case the county court granted a charter to erect a certain toll bridge which provided "that the bridge should ever remain free and open to the citizens of the county." It was held that the charter should be construed so as to give the citizens of the county the free use of the bridge whether they crossed on foot or otherwise, and also for the free passage of

any means of transportation employed by them in their lawful business.

As already observed, counsel for appellees, as a basis for the application of the doctrine of the above cases, assumes that the contract under consideration requires the traveling public generally, and not the traction company, to pay the bridge district for the right-of-way over the free bridge exercised by the traction company. This assumption which the counsel takes as his premise and the argument based thereon are plausible, but the premise is unsound, and his argument, however forceful, necessarily leads to an erroneous conclusion. Therefore, it occurs to us that the doctrine of the above cases is not applicable to the contract under consideration, when correctly construed.

We shall not undertake to analyze and comment upon the various provisions of the contract. It evidenced an agreement by which the bridge district is to receive a certain sum of money from the traction company for the right granted the latter to run its cars for the transportation of passengers over the bridge. The original act expressly authorized the bridge district to charge the traction company for its right-of-way over the bridge. *Nakdimen* v. *Fort Smith & Van Buren Bridge District, supra.* By the same token the traction company, having thus acquired the right-of-way over the bridge, could exercise it with all of its privileges, one of which was to charge passengers who used its facilities. The amount charged the traction company by the district is a definite and fixed sum ascertained and measured by the number of passengers which the traction company transports in its cars over the bridge and the amount which the traction company charges each passenger for such transportation. The traction company is a common carrier, and had a right to charge those whom it transported on its cars across the bridge according to the tariff of rates filed with the Corporation Commission. Act 571 of the Acts of 1919, p. 411, §§ 5, 6 and 7. See *Helena Water Co.* v. *Helena,* 140 Ark. 597. The money derived from

this source through the sale and use of tickets, and, by the payment and collection of the cash fares in the absence of tickets, was primarily the property of the traction company and not of the bridge district. It became the property of the bridge district only because under the terms of the contract the traction company agreed to let the bridge district collect and use it in payment for the right-of-way privilege granted the traction company by the bridge district, and because the bridge district agreed to accept it as such.

It is not contended by the appellees, and could not be successfully contended under the issues herein joined, that the traction company did not have the right to charge those whom it transported over the bridge on its cars a fare of $1\frac{1}{4}$ cents where tickets were used, or a cash fare of five cents without tickets, as specified in its schedule of fares. As a common carrier, it could not be compelled to furnish the public its facilities of transportation over its line across the bridge without compensation. The only authority under the law authorized to determine whether these rates are just and reasonable has approved them. See § 6, act of 1919, *supra.*

There is no provision in the original act creating the bridge district nor in the amendatory act authorizing the commissioners of the bridge district to charge the general public for the privilege of crossing the bridge. On the contrary, the power conferred upon the bridge district is "to construct and maintain a free public highway."

It is well established by our own decisions and the authorities generally that the right to exact tolls of the public for the privilege of crossing a public bridge must be conferred by statute or it does not exist. *Altheimer* v. *Plum Bayou Levee District,* 79 Ark. 234; *Nakdimen* v. *Fort Smith & Van Buren Bridge District, supra,* and other cases cited in brief for appellees.

Therefore, if the appellees are correct in the assumption that by the terms of this contract the general public

and not the traction company is required to pay the
bridge district for the right-of-way which the traction
company has over the bridge, then the contract is *ultra
vires* and void.   But, on the other hand, the original and
amendatory acts confer upon the bridge district the au-
thority to grant the traction company a right-of-way
upon terms to be fully set forth in a contract between
the bridge district and the traction company.   There-
fore, if the contract requires the traction company to pay
the money, which it is authorized to receive from passen-
gers, to the bridge district in payment for the concession
or right-of-way granted by it to the traction company,
and if the bridge district agrees to collect and receive
this money as such payment, then the contract is valid.
We are convinced that the latter is the only correct inter-
pretation of the contract in the light of the decision of
this court in *Nakdimen* v. *Bridge District, supra,* and the
amendatory act of 1913, *supra.*   The decree is therefore
reversed, and the complaint is dismissed for want of
equity.

Mr. Justice HUMPHREYS not participating.